## DUDLEY et al. vs. WITTER, Pro Ami.

[BILL IN EQUITY TO ENFORCE SURRENDER OF LAND SOLD BY TRUSTEE WITHOUT AUTHORITY, AND TO REQUIRE PURCHASER TO ACCOUNT FOR RENTS AND PROFITS THEREOF.]

1. *Decree of chancery court vesting property; effect of not recording.*—Recording a decree of the chancery court vesting title to real property, under the statute (Clay's Dig. p. 354, § 57,) was not necessary to its validity, but was notice of its contents, as the record of a deed under the registration laws.

2. *Purchaser; when chargeable with notice of trust.*—A purchaser of land from a vendor who claims it as his own, but who has no legal title except as trustee for another, is chargeable with notice of the trust.

3. *Order of court authorizing trustee to sell land; to what sale can not be referred.*—A sale of land as his own, by a vendor who is in possession as trustee of another, can not be referred to an order of court authorizing him to sell, as trustee, made several years before, when it was not so intended by him and the purchaser.

4. *Purchaser, charged with constructive notice of trust; when should not be considered as trustee in invitum.*—A purchaser charged with constructive

notice only of a trust, should not be held a trustee *in invitum*, when a mere want of caution, as distinguished from fraudulent and willful blindness, is all that can be imputed to him.

5. *Continuance; although matter of discretion, when reviewable.*—A continuance and its terms is a matter of discretion, and not reviewable unless the conditions required amount to an improper and unjust abuse of the discretion.

APPEAL from Chancery Court of Lowndes.
Heard before Hon. A. C. FELDER.

SOME few years prior to 1841, Francis Lewis died intestate in Lowndes county, leaving a widow and seven children, his only heirs-at-law, and a large estate, real and personal. Complainant was the youngest child, and after her father's death, and in the year 1839, she, being then a minor, married one Lampkin, who died in 1856. In 1842, complainant filed in the chancery court of Lowndes, her bill to enforce her equity to a settlement out of her portion of her father's estate. Her husband, and the widow and all the other heirs-at-law, and the personal representative of her father's estate, were parties defendant to the bill. In 1843 a decree was made in that suit, which set apart to each of the children and to the widow their respective portions of the estate, describing with clearness the property, real and personal, embraced in each portion. It was expressly provided by said decree, that the portion so - described and set apart to complainant should be " vested and held by the said Mary D. Lampkin to and for her sole and separate use for and during her natural life," &c., and at her death " the said portion of lands, and the slaves with their future increase, to be equally divided among such child or children as the said Mary D. may leave living ;" * * * " and after the death of said Mary D., without leaving such child or children alive, or their issue, as above, then such portion of the said Mary D. to vest in the said John B. Lampkin, her husband, but not otherwise." The said decree closed thus : " It is further ordered and decreed, that Hamlin F. Lewis be, and he is hereby appointed trustee for the said Mary D. Lampkin ;

43

that he shall give bond and good security to the register of this court, conditioned that he will account and pay over to the said Mary D., and to no one else, all such sums of money as he may receive as trustee aforesaid ; such bond to be in double the value of the personal estate and double the annual income of the . real estate, and that he will account annually in this court, and that he will perform the duties of a trustee faithfully, and also, that he will abide by and perform such order and decree as the court may make touching said trust estate." This decree was never recorded in the county court office, as required by Clay's Digest, p. 354, § 57.

The trustee was one of the brothers of complainant, and a party to said suit and decree, but never gave bond, or accounted, &c.

On the 3d of July, 1846, complainant and her trustee filed an *ex parte* petition in said chancery court, praying that the trustee be allowed to sell the lands for five thousand dollars, that price having been offered therefor. Thereupon a reference was ordered before the register, to ascertain the value of the land, and if the sale would be of benefit. Upon this petition a decree was rendered upon the coming in of the report, which, after reciting the petition, &c., is as follows :

" It is therefore ordered and decreed that the report be confirmed, and that Hamlin F. Lewis, the trustee of Mary D. Lampkin, sell said lands at the sum of five thousand dollars cash, if that price can be obtained, and if not, that he sell the same on a credit of one and two years, and that he invest the proceeds of the sale in another plantation suitable to the number of negroes of his *cestui que trust ;* * * * that the surplus be invested in other negroes, &c., to aid in carrying on said plantation. The purchase of such plantation and negroes must be made with the approbation of the master, whose duty it is to see that they are suitable and proper, and that the right and title is clear and unquestionable, and that sufficient conveyances to said plantation and slaves to be purchased, are made, to secure the same to said *cestui que trust*, to the same uses and

trust, and upon the same terms, as her present lands are now held by her trustee. It is further ordered, that the master report, at the next term of this court, what shall have been done in the premises, and that said trustee account annually, in this court, touching the profits of said plantation and slaves, and that he pay the costs of this petition out of the estate of his *cestui que trust.*"

No report was ever made to the court of any sale under this order, and no accounts were ever filed by the trustee. Dudley did not know of this order at the time he purchased, but insists that, especially under the circumstances of this case, the sale should be referred to the power of sale given in the decree of 1846. Nothing whatever is said in reference to this decree in the conveyance from Lewis and Scott to appellant Dudley.

About 1847 or 1848 the said John B. Lampkin, the husband of complainant, removed her and the personalty (slaves) of her separate estate from Lowndes county to the State of Mississippi, where complainant lived with her husband until his death there in 1856. After she was thus removed to Mississippi, and in 1851, her trustee, Hamlin F. Lewis, and her brother-in-law, Robert L. Scott, sold and conveyed to John Dudley, for the round sum of $18,000, twenty-one hundred and twenty acres *in mass*, part of which was, by the terms of the conveyance, to be "located and defined upon the terms and conditions of a written contract between the said Robert L. Scott and H. V. Smith." The 720 acres which had been settled on complainant by said decree was sold and conveyed in this mass of 2120 acres, without any price being mentioned or specified for the 720 acres, or any other part of the 2120 acres. At the time of the sale, Lewis was in possession of the land, and had been cultivating it with his slaves for several years. Lampkin and wife had been in possession and cultivating the land with the slaves of the estate continuously from 1840 until the decree of 1846. Soon after this sale, and in 1853, the said Hamlin F. Lewis removed from Lowndes county to Texas, where he died not long after his arrival there, his estate being insolvent.

Not long after the death of her husband (Lampkin) in 1856, complainant, being advised by counsel that she could recover her said lands at law, pursued the advice and brought an action in her own name (she being then a widow,) in the circuit court of Lowndes against said Dudley, to recover her said lands. In the said action she was defeated in the circuit court, and afterwards on appeal in the supreme court, on the ground that the nature of her right to said lands was such that it could not be enforced in a court of law, but only in a court of equity. During the pendency of this litigation at law she married her present husband, Witter, and soon after said decision of the supreme court, to-wit, on the 15th of September, 1860, she, by her next friend, filed the present bill in the chancery court of Lowndes against said Dudley and the personal representatives of his said grantors, Hamlin F. Lewis and Robert L. Scott, to require Dudley to surrender the possession of the lands to her, and to account for the rents and profits from the time he went into possession. The chancellor granted the relief prayed for, and ordered a reference to the register to take and state an account charging Dudley with rents from the 1st of January, 1852, to date, with interest thereon each year at eight per cent., and allowing proper credits for improvements, &c., with interest.

There is no evidence showing that complainant consented to the sale, or acquiesced in it. Nor does it appear how long complainant remained silent after she knew of the sale.

The register submitted a report, in which he charged Dudley with the rents from the year 1852 to date. To this there was an exception, because Dudley was only liable for rents, under the facts of the case, from one year preceding the commencement of the suit. This exception was overruled and the report confirmed, &c.

At the October term, 1870, complainant being ready for trial, Dudley applied for a continuance, so as to examine witnesses to prove that complainant had ratified the sale of the land in controversy, and received of Lewis the purchase-money. The chancellor required, as a condition

precedent before granting continuance—1st, that Dudley give bond in ten days, with sufficient sureties, in the sum of $30,000, conditioned to pay and satisfy any decree that may be rendered against him or his personal representatives; 2d, that Dudley pay fifty dollars of the costs to the register in ten days; 3d, that if these conditions were not complied with, then the order of continuance is revoked, and the cause to be submitted to the chancellor, with full power and consent to decide the same in vacation; 4th, that defendant was to come to trial by next term, and make no further application for continuance or delay.

The record then states, " said Dudley accepts said terms and conditions."

There is nothing in the record showing that Lewis was ever called upon to account, &c.

The testimony is quite voluminous, and it is unnecessary to attempt to give an abstract of it. It sufficiently shows that Dudley, for between ten and seventeen years, lived in Dallas county, twenty-five or thirty miles from the land, and was intimate with Francis Lewis and his family, frequently visited him before his death, and his family afterwards, and on such visits occasionally passed by the lands, which he knew as the property of said Francis Lewis. It is also clear, from the proof, that Dudley had no actual notice of the claim of appellee to the land, but purchased it in good faith for a valuable consideration, supposing he was obtaining a fee simple title.

The complainant, deducting the time of her minority, and coverture, and involuntary absence from the State with her husband, brought suit as before stated, before her right to do so was barred by the statute of limitations.

The decree rendered, and the confirmation of the master's report, are now, among other things, assigned as error.

WATTS & TROY, MORGAN & LAPSLEY, and R. M. WILLIAMSON, for appellants.—1. We contend, that as to John Dudley, the interest of Mrs. Witter in the land sued for was a secret or concealed trust, of which he had no actual

notice; and of which he had no constructive notice, because the proof shows that no fact came to his knowledge which would have led a prudent man to doubt the title of Hamlin F. Lewis, or that would have suggested to the mind of a prudent man that Mrs. Witter had any interest in the land. And further, that John Dudley having bought the land for a full price, which he paid in cash, and from a person in the exclusive possession of the land and claiming ownership, the law excuses him from any inquiry into the title deed of his vendor. And further, that the facts known to John Dudley were sufficient to produce on the mind of a reasonable man, a belief that the title to the land had been cast on him by descent from his father, and that it required no title deeds to enable him to derive a perfect title to the lands by descent from his father. And further, that the constructive notice of a trust (not actually known to a purchaser,) is never imputed to him, unless he is compelled to trace the title of his vendor through the channel, and through the channel only, in which the trust appears, or is disclosed by some reference thereto in the title.

And in support of these propositions we cite the following authorities:—*Jones v. Smith,* 1 Hare, 55; *West v. Reed,* 2 Hare, 250; *Fleming v. Burgin,* 2 Ird. Eq. 584; Leading Cases in Equity, vol. 2, part 1st, pp. 132, 133; Clay's Dig. p. 384, Act 1841; Hill on Trustees, top pp. 768, 769, 773 and note 2; *Ib.* top p. 708; *Cress v. Phelps,* 2 Root, 420; *Dodson v. Simpson,* 2 Rond. 297; Judge Carr's opinion in *Geoff v. Castlemore,* 5 Randolph, 209; *Wollvyn v. Lee,* 9 Vesey, 31; Story's Eq. Juris. vol. 1, §§ 399, 400; White Tudor's Leading Cases in Equity, vol. 2, p. 1, p. 132; *Miles v. Langley,* 1 Russ. & Myln, 40; *Ware v. Egmont,* 31 Law & Eq. Rep. p. 89; *Hare v. Smith,* 14 Vesey 426; *Smith v. Jones,* 1 Phillips, (Eng. Ch.) 251; *Cathay v. Sydenham,* Brown's Ch. 391; *Moore v. Bennett,* 2 Chan. Cases.

2. This doctrine is applied with its greatest force in equity.—2 Story's Eq. Juris. section 1502 and notes 1 and 2; *Jones v. Powells,* 3 Milne & K. 317; Tiffany & Bullard on Trusts, pp. 199, 200, 1, 2, 3; 1 Story's Eq. Juris. § 64c,

§§ 108, 395; Sugden on Vendors, top p. 507, and pp. 2, 3, 4 and 5; see 15, 16, 17, and § 13, top p. 511.

3. The conduct of Mrs. Witter in filing her petition to have the land sold, and her acquiescence in Dudley's purchase and possession for more than five years estops her in equity from insisting that Dudley had constructive notice of her trust.

As to this land she was a *feme sole,* and could part with her right to it in any way not prohibited by the terms of the decree under which the trust was established.—*Johnson and Wife v. B. Greene,* 17 B. Mon. 118; 2 Story's Eq. Juris. § 1390 and note 1, § 1502, and notes 1 and 3; *Robinson v. Smith Cullom,* 39 Alabama; *Jones v. Bowles,* 3 Mylne & K. 317; Tiffany & Bullard on Trustees, pp. 199, 1, 2 and 3; *Baker v. Gregory and Wife,* 28 Ala. Rep. 544; *Blevins v. Buck,* 26 Ala. Rep. 292; *Oxley v. Eilkelheimer,* 26 Ala. 332; *Mather and Wife v. Smith,* 28 Ala. 569; Cord Husb. and Wife, § 262; *Gardner v. Gardner,* 22 Wend. 526; Tiffany & Bullard on Trustees, p. 649, and cases cited, note (1,) and 65, 7, 8; 689, note (1,) 686 and 689; *Jaques v. M. E. Church,* 17 Johns. 548: *Burch v. Breckenridge,* 16 B. Monroe, 482; *Bradford and Wife v. Greenway,* 17 Ala. 797, *Puryear v. Puryear,* 16 Ala. 486; *Watters v. McPherson,* 17 Ala. Rep.; *Stone v. Britton,* 20 Ala. Rep.; *Smith v. Monday,* 20 Ala. Rep.

These cases also show that the conveyance of Davis to Dudley, was so executed as to pass the trust estate of Mrs. Witter to the purchaser.

Judge Byrd, in the opinion delivered in this case, when before in this court, says that a sale by a trustee appointed by the court of chancery on an order of the court, the legal title having been vested in him for the purposes of the trust, passes no title until the sale or deed is confirmed by the court. This is said in answer to the argument then submitted that the sale by H. F. Lewis, under the order of the chancellor in 1846, passed the legal and equitable title to Dudley. The opinion by Judge Byrd, if correct, is conclusive against the appellant, so far as the authority of H. F. Lewis to sell under that order is concerned. It is there-

fore desired that this court will give the correctness of this opinion an unbiassed investigation. It may be that the final disposition of the case will depend upon the decision in point—if it be decided adversely to the opinion of Judge Byrd—and favorably to the view which we shall take of it in this argument. It will be unnecessary to decide the other questions involved in the record.

That the order of 1846 did give H. F. Lewis authority to sell the land in controversy is not controverted; but the objection to the validity of the sale is, that he did not sell in pursuance of the terms of the order.

In what character was H. F. Lewis authorized to sell said land? He was already the trustee of Mrs. Lampkin; the legal title was previously vested in him by decree of the court; the order expressly directs that H. F. Lewis, the trustee of Mary D. Lampkin, sell; the petition of Lewis and Mrs. Lampkin prays that Lewis, the trustee of Mary D. Lampkin, be allowed to sell and convey the said lands at a fixed price, and to invest the purchase-money, &c. Lewis is not required to report said sale for confirmation. In addition to the authority to sell, he was diected to invest the proceeds of sale with the approbation of the master, and the master, not Lewis, is to report what had been done as to investment. Does this look like Lewis was to act as an officer of the court? He, as trustee, was directed to sell. There was no necessity that he should report to the court, that he has sold for confirmation; the price had been fixed by the court; he was directed what he should do with the proceeds; that he should invest them under the direction of the master, and the master was directed to report what had been done in the premises at the next term of the court. Now, be it remembered, that under this order everything that is required to be shown to the register, (and of course all the register was called on to report,) was how the proceeds of the sales had been invested. Could this have been done at the then next term of the court, if Lewis had not sold the land and collected the money before that time? Could the chancellor have contemplated that Lewis would have found a pur-

Dudley et al. v. Witter pro ami.

chaser, made a contract of sale, collected the money, and then for that purchaser to wait till the next term of the court for the chancellor to say if the purchase should stand and he receive a deed for the land? It was unreasonable to have expected Lewis to do all this. It was contrary to the usual course of dealing among men, and only the most explicit language should be so construed. A confirmation of a sale under a decree is necessary when the terms of sale may not be beneficial to the parties; but when the terms of sale are fixed, the price to be obtained, and what is to be done with the proceeds, it is entirely unnecessary.

It was not necessary that the sale be confirmed to pass the legal title, for that was already in H. F. Lewis. It was not necessary to secure a fair price, for that was fixed by the chancellor; it was not necessary for the purpose of re-investing the proceeds of sale, for that was expressly directed by the order, and that it should be done under the supervision of the register. The order contemplated that the land should be sold, the money collected (if sold for cash), and invested under the direction of the master before the next term, for at that time the register was to report. Is it not strange that all these things should have been contemplated, and that that act of the transfer conveying titles, out of which those very things alone could spring, should not have been authorized? It would be a strained construction in a case of doubtful language. Here, after directing that the register shall report, &c., it is directed that the trustee shall account for the rents and profits of " said plantation and slaves." What plantation and slaves are referred to under the word " said?" Those to be purchased by Lewis with the proceeds of the sale of the land in controversy? The authorities referred to by Judge Boyd do not sustain the application of the principles to this case. In the case in 3 Sneed, the sale was made by the register, and the legal title was undivested and outstanding in their persons. In the Maryland cases the sale was made by a " trustee of court," similar to our register. In all of the cases the sale was made by an officer of the court, and the theory of sales of that character (1 Smedes

and Mar. Ch. p. 522) is, that the court is itself the vendor, and the officer the mere agent of the court. But it will be observed in all the class of cases, that the legal title is outstanding in some persons who do not participate in the sale. A. cannot sell and convey the legal title to B.'s land without some judicial divestiture of the title out of B. If A., however, has the legal title in him, and B. a right to the use or profits, a bare authority to A. to sell is sufficient, particularly when the price and terms of sale and the disposition of the proceeds are fixed by the order of sale. The purposes for which a confirmation required are wanting, and the not doing an unnecessary thing should not vitiate the sale.—*Jones & Blair v. Bende,* 20 Ala. 382.

We think, then, the order authorized Lewis to sell the land as trustee of Mrs. Lampkin, and as he already held the legal title by previous decree of the court, it was not necessary that he should be specifiedly authorized to convey the legal title, and that the sale did not require confirmation, as he was directed in all things how to proceed.

2. Was the order of the chancellor in 1846 a continuous authority, or was its force spent at the next term of the court? The direction given to the trustee by the order, shows that the chancellor contemplated that the trustee might not comply with its terms by the next term of the court. If he could not sell for cash he was to sell on one and two years credit, and in either event he was directed how to apply the proceeds. He was not to report to the court, but to the register, that he had sold, after he had collected the purchase-money, which would not occur for two years after the date of the order. That he was to report to the register after the purchase-money was collected, is implied from the direction in the order that the investment was to be made under the approbation of the register ; and then only was he to report at all. This contemplates at least a period of two years after the order before the trustee could have acted under the order in making investment. It might have been longer, for he had to find a purchaser at a given price, which would require time. The trustee is required to account annually

in the court for the profits realized from the land and slaves to be purchased by him with the proceeds of the sale of the land. Until profits arise from the new purchase, he is not called on to make any report to the court. Here the order shows that its terms could not, in one event—a credit sale*—be complied with till after two years, and the only matter the trustee is called on to report to the court (profits arising from the new purchase) might not have arisen in five or ten years.

Was the sale an execution of the power to sell under the order of 1846 ? The tendency of ruling upon this question in England and this country is to a liberal construction, to effectuate the execution of a power, and the principle is, that if a will or deed be made, without any reference to the power, it operates an execution of the power, if it can not have operation without the power.—Sugden on Power, 297, ed. 1823 ; *Bradish v. Gibbs,* 3 Johnson C. R. p. 551 ; *Bishop v. Resople,* 11 Ohio (O. S.) 277.

A reference to the matter (property) is sufficient to indicate the intention to execute the power, although no reference to the instrument creating the power be made. If the property be specifiedly named or described, it is sufficient.—*Bishop v. Resople, supra ; Morey v. Michael,* 18 Mo. 241 ; *Blagg v. Miles,* 1 Story C. C. R. 427.

The cases draw a distinction between the execution of power by will and by deed, and the rule is more strictly applied to wills than to deeds. Judge Story, in the last case cited, classes the cases in which the power is properly executed.

1st. When there has been some reference, in the will or other instrument, to the power" ; 2d. or a reference to the property which is the subject on which it is to be executed; 3d. or when the provision in the will or other instrument executed by the donor, if the power would otherwise be ineffectual or a mere reality ; in other words, it would have no operation except as an execution of the power. The deed of H. F. Lewis and Scott specifies the property by particular description, and could have no operation as to that land, except by way of execution of the power. The

English parliament have done away with the technical niceties which formerly embarrassed the execution of power, by declaring that a general devise, of real or personal property shall operate as an execution of a power of the testator over the same, unless a contrary intention shall appear on the will" ; and this, Judge Story says, is a doctrine which would seem to be the dictate of common sense.—See Note, 1 Story, (C. C.) Rep. p. 458.  Did the facts that the deed from Lewis and Scott to Dudley embraced other lands than those held by Lewis as trustee, and that Scott and wife joined in the deed, defeat the deed as an execution of. the power to sell.  There is no reason why it should.  Lewis was required to attain $5,000 for the 720 acres.  The sale shows that by joining the same with other lands owned by him and Scott, he obtained about $6,000 for the same.  In addition, it is presumable that it brought a better price on account of the covenants of warranty by Lewis and Scott.  The effect, then, of the mode of sale, was the security of title to the purchaser and consequent better price for the land.  This furnishes a reason for the particular mode of conveying in this case, perfectly consistent with the execution of the power of sale by Lewis, and in furtherance of the interest of the *cestui que trust*. Does the joining of Scott and wife in the deed vitiate it, as the execution of the power by Lewis ?  The circumstances surrounding the sale to Dudley, show that several parcels of land were sold to D., some of which belonged to Lewis and Scott, and the land of complainant which Lewis was authorized to sell.  It could not defeat any of the purposes for which the power was given to Lewis—a sale of the land and reinvestment of the proceeds.  The power authorized Lewis to sell; he did 'so ; and Scott and wife joined him in the deed, conveyed what interest they had and guaranteed the title to Dudley ; and instead of being injurious to the interest of the *cestui que trust*, it was beneficial.

When a power is given two or more, generally they should all join in the execution of it ; in every case, perhaps, when the legal title is vested in all ; but the converse of the rule can not be correct.  It might in some cases be

necessary for the benefit of the appointee that others should join the appointor, if not absolutely necessary. Suppose a power of sale to a married woman, and she attempts to execute it during coverture, would her husband not have to join her in the deed? It is only a superadded force to the deed, and, if it is good without that, it will not vitiate it. *Dillon v. Grace,* 2 Scho. & Lef. 456; *Madison v. Andrew,* 1 Ves. Sr., p. 61; *Stadden v. Stadden,* 2 Ves. Jr., p. 589 Sugden on Power, pp. 291, 296.

Suppose a trustee of an estate for life, with power to lease, should join the remainder-man in a conveyance of the fee. This would undoubtedly be good to convey the life estate and remainder. It is but the dictate of common sense that in any case where an additional guarantee is given the purchaser, and an enhanced price is thereby obtained on a sale under a power, by others than the donee of the power joining in the deed of conveyance, or by embracing other property than that mentioned in the power, (when the very thing which the power authorizes is done,) that the conveyance should stand as an execution of the power, if in all other things it is complied with.

4th. Was John Dudley bound to see to the appropriation of the purchase-money?

The principle upon which a purchaser from a trustee is held to see to the application of the purchase-money is, that the money is to be paid to some particular person, or for some particular purpose, in which the trustee has no discretion, and no time to elapse between the sale and the application of the money. If the trustee is clothed with a discretion, or the application can not reasonably be simultaneous with the sale, the purchaser is absolved from such duty. This question is fully discussed in the case of *Elliott v. Merryman,* in 1 Leading Cases in Equity, top page 97, and in the notes thereto.

RICE, SEMPLE & GOLDTHWAITE, for appellee.—"A wife, by the general doctrines of the court of chancery, has equitable rights, independently of contract or gift, as regards real as well as personal property." Amongst these, is her

equity for a settlement. "This equity" is "inherent." "The decree does not give her the equity; she has it (that is, the equity,) independently of the decree."—2 Spence's Eq. Jur. 482, 488, and note e, referring to *Steinmetz v. Halthin,* 1 Glyn & J. 68. "It is an equity, grounded upon natural justice; it is that kind of parental care which a court of equity exercises for the benefit of orphans; and as a father would not have married his daughter without insisting upon some provision, so, a court of equity, which stands in *loco parentis,* will insist on it."—2 Story's Eq. Jur. § 1407. It is applied to "all cases of the real estate of the wife, whether legal or equitable."—2 Story's Equity Jur. §§ 1408, 1414.

The court in sustaining such bill is, "in truth, enforcing against the husband, her admitted equity to prevent an irreparable injustice."—2 Story's Eq. Jur. § 1404.

This equity may be waived or lost by the misconduct of the wife; but not by the misconduct of a trustee appointed by the court, to preserve it under the continuing supervision of the court.—2 Story's Eq. Jur. §§ 1416 to 1420.

Is it a fair or just construction of the decree of 1846, that the object of the court in making it was to confer upon the trustee the power to sell the separate estate therein created? Was it the object to confer upon him the power to sell, even before he executed the bond therein required of him? Does not the decree, taken as a whole and construed in connection with the bill under which it was rendered, amount to prohibition against alienation by the trustee; at any rate, to a prohibition against alienation by him without his giving the required bond?—*Field v. Evans,* 15 Simons, 375; 2 Spence's Eq. Jur. 522, and notes; *Fears v. Brooks,* 12 Ga. 195.

Why should the court have conferred upon the trustee the power to sell the separate estate? Why did the court require a bond, a heavy bond of him? Why did the court omit to confer upon him any power or prescribe to him any duty, except in the significant form of the condition which he was required to insert in his bond? The court never intended him to do any act as trustee, to exercise any power

as trustee, over the estate, other than merely taking care of it, until he first gave the bond with the condition so carefully and instructively required. (He was to give the bond to the register.)—*Jackson v. Simonton*, 4 Cranch's Cir. Ct. Rep. 260, where the court say : " He could do no act as marshal until he had given the bond required by the statute, and until it had been received by the proper officer ;" see, also, *Cleveland v. Chandler*, 3 Stew. 489.

It is perfectly clear, that a guardian or other trustee who, by the very terms of the instrument appointing him, is required to give bond to a designated person or officer, with condition that he will faithfully perform all his duties, has no disposing power over the estate, until he gives such bond and it is received by the person or officer designated. *Cleveland v. Chandler*, 3 Stew. 489.

Looking at the decree which created the separate estate in favor of the complainant in this case, the question is, (in the language of Sir William Grant,) " whether the absolute property (for life), including a power of disposition, was intended to be given ; or whether it was a personal gift only, without a power of disposition." Whenever the court sees "from the words, an intention to limit her to a personal gift, without a power of disposition," the court will not permit an interest inconsistent with it to be effectual.— *Wagstaff v. Smith*, 9 Vesey, 520 ; and *Harvey v. Blakeman*, therein stated and approved ; *Fears v. Brooks*, 12 Georgia R. 195. The provisions are all " systematic ;" and, therefore, they must be so construed that " every part may take effect according to the intent " of the decree and law.—*Ives v. Lynn*, 7 Conn. R. 514.

Upon reason and authority, the trustee named in said trustee had no power to sell the separate estate ; he is evidently a mere trustee " raised up by the court to preserve the separate estate," and the very court of equity which appointed him cannot permit his sale " to defeat the estate."—*Franklin v. Creyon*, Harper's Equity (S. C.) Reports, 552.

In a case not stronger than this is, for the complainant, against the sale of the trustee, Lord Hardwicke said : " If

this had been a bar in point of law, to all intents and purposes, it would be none in equity." * * " Being trustee of this very fund, she (the trustee in the case in which Lord Hardwicke was dealing,) does an act, which is insisted on to be a bar and extinguishment to this trust of hers. On this foundation, therefore, supposing the fine good in law, this court (the court of equity) ought not to bar the equitable right creditors had to this fund for the payment of debts, and also the infante's." * * * " If a practice of this kind was suffered to prevail, a court of equity might as well be abolished by act of parliament." *Pomfret v. Windsor*, 2 Vesey, 482.

Under the decree appointing Hamlin F. Lewis trustee, his power or authority to sell was not other or different from what it would have been had he been called " receiver" instead of " trustee." His duties are specified in the specified condition of the bond required of him, and are those of a receiver.—3 Daniel's Ch. Pl. and Pr. 1949. This specification of his duties excludes and repels the idea of his authority to sell. A sale by him is obviously inconsistent with his duties as prescribed in the decree. *Fears v. Brooks*, 12 Georgia Rep. 199.

The possession of the lands by Lewis was gained by him as, substantially, a receiver under the decree of the court, and for that reason cannot operate to injure the complainant. The court will say to him, in the language of Lord Hardwicke : " You gained that possession, therefore, in confidence, and you shall not by means of that possession, defeat the title of the person for whom you had possession."—*Kennedy v. Daly*, 1 Sch. & Lefr. 380, 381 ; *Pomfret v. Windsor*, 2 Vesey, 481, 482.

It is clear, that unless that possession is allowed to operate to the injury of the complainant, there is not even a decent pretext for saying that Dudley is a purchaser without notice, for that possession was the only *indicium* of ownership which the vendors of Dudley had. Strip them of that possession, and they had not a single *indicium* of ownership, and a purchaser from them could not be a purchaser without notice.

In *Scott v. Davis*, 4 Mylne & Cr. 89, Lord Chancellor Cottenham laid down the following incontrovertible proposition : " That the rights of others to deal with a married woman as a *feme sole*, (or with her separate estate) are limited by the provisions of the gift (whether by deed, will, decree or other instrument,) to her separate use is the principle of all the equitable jurisdiction upon the subject."

From this proposition or principle, it is a necessary sequence, that whoever deals with a married woman as a *feme sole*, or with her separate estate, deals at his peril. If he is a purchaser of such property, the maxim, " *caveat emptor* " applies to him in its utmost rigor ; and want of notice of the limitations contained in " the provisions of the gift to her separate use," cannot be permitted, in a court of equity, to annul those limitations. There would be no real safety or protection of married women as to their respective estates, if the want of notice of " the provisions of the gift " could have the practical effect of creating in their trustees power to sell their separate estates, when, in fact, no power of sale could be found in " the provisions of the gift."

In *Michan v. Wyatt*, 21 Ala. R. 813, our supreme court held and applied this doctrine ; for, in that case, notice to the purchaser was neither alleged nor proved ; he denied notice, and claimed protection as a *bona fide* purchaser without notice. The court decided against him, and for the claim of the wife to her separate estate.

Such separate estates as that of the complainant, that is, separate estates recognized by a court of equity, independently of any statute, are "something more than mere trust estates." Such separate estate is "peculiar in its character." By the doctrine and practice of courts of equity, such separate estates are entitled to a higher and more stringent protection from those courts, than mere trust estates.—Legal and Eq. Rights of Married Women, by Cord, §§ 402, 269, 264, 265, 263.

A trustee like Lewis, appointed by the court, is not the kind of trustee who can convey the legal title. No legal title is expressly conferred on him either by the decree or

44

other instrument. He takes the legal title merely by implication—merely "to enable him to discharge the duties imposed upon him," not for any other purpose.— *Witter v. Dudley*, 36 Ala. R. 139.

The only kind of trustee who can sell, without a clear delegation of such power, is a trustee to whom the legal title is clearly and expressly conveyed without any restraint or obligation.

Notice to such a purchaser as Dudley, of such property as he bought, from such a trustee as Lewis, was not necessary, and is not necessary to the preservation and enforcement of complainant's rights to such property.—*Scott v. Davis*, 4 Mylne & Cr. 91, 92 ; *Michan v. Wyatt*, 21 Ala. R. 813.

"The principle which discharges a *bona fide* purchaser without notice, from liability on account of equities which would affect his grantor, is inapplicable to a case where the consideration, or a material part of it, is an agreement by the grantee, that he will support the grantor and his wife during their lives."—25 U. S. Dig. p. 513, § 12.

If notice to Dudley was necessary, "the circumstances of the property affected him with notice."—*Scott v. Davis*, 4 Mylne & Cr. 91–2.

Separate estates are of two classes—1st. creatures of equity courts ; 2d. creatures of statutes, or of instruments executed by persons or individuals, such as deeds or wills.

The separate estate of complainant belongs to the first class. It is the mere creature of the court of equity, in the exercise of that original jurisdiction which is inherent in it, and which it has "no right to relinquish." It is an equitable estate, as distinguished from a legal estate ; and the court of equity which created it, has never for an instant relinquished, but still retains jurisdiction over it.—Cord's Legal and Eq. Rights of Married Women, sections 257, 269, 270, 271, 275. And the trustee could not by his sale put an end to this continued and continuing jurisdiction over this particular estate, nor withdraw the estate from the protecting power of this jurisdiction.

The decree, being the instrument which created this sep-

arate estate, must be the test by which to determine the powers and rights of the trustee over the estate. Evidently he had not the power to sell, unless conferred by that instrument. And it is equally evident, that a sale by him, without ever having given bond, is inconsistent with the terms and objects of the decree. The plain words and meaning of the decree, are that "the portion as vested in the said Mary D. be vested and held by the said Mary D. to and for her sole and separate use for and during her natural life." The sense of these words is, that the estate should not be sold by the trustee, nor be taken from her nor be held and enjoyed by a purchaser from him.

At the time of the sale to Dudley, his grantor, Scott had no interest or right in or to said property—constituting the separate estate of complainant; and his other grantor, Hamlin F. Lewis, had no interest or right therein, except such as said decree may have conferred upon him as the trustee therein appointed to carry out its provisions and objects.

Dudley's claim to protection is based solely on his asserted actual ignorance of "the circumstances of the property." If such actual ignorance is available to Dudley, it is equally available to all other like purchasers of like property from like trustees. To hold that there is any rule which gives such effect to such ignorance, is to place all such separate estates "virtually out of the pale of the law;" for all that is necessary, under such a rule, to defeat the provisions made by the courts for the protection of married women, is that the trustee should select a purchaser who has the requisite measure of ignorance, and make a sale to him for valuable consideration. Courts of equity can never forget that such separate estates are their own creatures—and creatures "inconsistent with the ordinary rules of property," (*Tullett v. Armstrong,* 4 Mylne and Cr. 390;) and that the only justifiable end of their creation, was the security of married women against want, which security the courts of equity felt was due to them and could not be attained without the exercise of the transcendent power of

those courts, inconsistently "with the ordinary rules of property."—*Tullett v. Armstrong, supra.*

Courts of equity can not excuse such ignorance; especially when, as here, it cannot operate merely as a shield to the purchaser, but must operate, if it operate at all, as an instrument of destruction against married women, and married women who were profoundly ignorant of the sale by the trustee at the time it was made, and who were and are free from fault.

It is impossible to hold, that the equities of such a purchaser and of a married woman for whom such a separate estate had been created by a court of chancery, are equal. The equities of such parties are not equal. " There is some balance on the one side for not enquiring ; none on the other."—*Franklin v. Creyon,* Harper's Equity, (S. C.) Rep. 253 ; *Michan v. Wyatt,* 21 Ala. R. ; *May v. Nabors,* 6 Ala. R. 24 ; *Lucas v. Kernodle,* 2 Ala. R. 199 ; *Keech v. Hall,* Douglass R. 22, cited and approved in *Chapman v. Glassel,* 13 Ala. R. 55 ; *Nelson v. Allen,* 1 Yerger, 366.

In such case, the mere fact that the trustee had at a former period owned a partial interest in the property, as one of several heirs at law of a former owner, can make no difference.—*Lucas v. Kernodle,* 2 Ala. R. ;199 ; *May v. Nabors, supra,* 25 U. S. Dig. p. 514, § 13, 14.

The title to land *(inter vivos,)* can pass only by deed. This is the public policy of Alabama, as well as of other States where the statutes of frauds prevails.—*McPherson v. Walters,* 16 Ala. 714.

In the absence of stipulations as to the title, the law gives to a purchaser the right to require a good title. If, however, he does not exercise this right, but accepts a conveyance, and the seller does not practice any fraud in the sale ; and if after this, the purchaser is evicted by a title to which his covenants do not extend, he is without remedy for his loss in any court. If the seller defrauds him, then his remedy is against the seller personally ; but the title of the real owner is not affected or impaired. The law requires " the purchaser to apply his attention to those particulars which may be supposed within the reach of his

observation and judgment," (amongst others, to the claim or abstract of the title). " If the purchaser be wanting of attention to those points where attention would have been sufficient to protect him from surprise or imposition, the maxim, *caveat emptor*, ought to apply."—*Cullom v. Branch Bank at Mobile*, 4 Ala. R. 21, and authorities therein cited. *Chapman v. Glassel*, 13 Ala. R. 55, citing and approving, *Keech v. Hall*, Douglass R. 22.

" It is his business to inquire and to look to the person with whom he deals." * * * " He can always be safe, if he uses due diligence ; but the other party has no means of safety, beyond his application to the court."—2 Leading cases in Equity, Hare & Wallace's notes, (3d American edition,) 172 ; *Chapman v. Glassel,* 13 Ala. R. 55, and *Keech v. Hall*, therein cited.

In *Stery v. Arden*, 1 Johns. Ch. R. 267, Chancellor Kent held a purchaser chargeable with constructive notice, who had only heard that the vendor had made some provision for his daughter out of the property.

" Nothing is better established * * * than that a purchaser will have constructive notice of every thing which appears in any part of the deeds or instruments, which prove and constitute the title purchased, and is of such a nature that if brought directly to his knowledge, it would amount to actual notice." * * * " Such notice * * * is of the most conclusive nature, and is insusceptible of being explained away or being rebutted." * * * " When, therefore, its existence appears from the documents or papers actually accompanying the answer, it will overrule a positive denial of notice in the answer itself." 2 Leading Cases in Equity, Hare and Wallace's notes, (3d American edition), 168,169, 170 ; citing *Johnson v. Thweatt*, 18 Ala. R. 741, and a number of other like decisions. *Gimon v. Davis*, 36 Ala. R. 589 ; *Fitzhugh v. Barnard* ; *Burch v. Carter*, 44 Ala. ; 12 Michigan R. 104 ; *Parks v. Jackson*, 11 Wend. R. 453 ; 25 U. S. Dig. p. 514, §§ 13, 14 ; 24 U. S. Dig. p. 177, §§ 59, 69 ; 23 U. S. Dig. 167, § 83 ; 23 U. S. Dig. p. 168, §§ 94, 95.

The pendency of the account decreed in the original suit,

to be made by the trustee, from year to year, to the court, in the matter of the separate estate specifically described in the decree itself, was a *lis pendens*, at the time of Dudley's purchase, and therefore in law notice to him. (This is law in Alabama and other States of the Union, although it may not be in England).—*Bolling v. Carter*, 9 Ala. R. 921; *Hoole v. Attorney General*, 22 Ala. R. 190; *Center v. Pl. & M. Bank*, 22 Ala. R. 733; *The State ex rel. Waring v. Mayor &c. of the city of Mobile*, 24 Ala. R. 701; *Bond v. Hopkins*, 1 Sch. & Lefr. 438; 2 Leading Cases in Equity, Hare & Wallace's notes, 170, 177; *Jackson v. Warren*, 32 Illinois Rep. 332, 340.

It is conceded, that a decree is not implied notice to strangers, after the cause is ended. But when, as here, the decree does not put an end to the cause, but continues and keeps the property (duly described), *sub judice* for the purposes of accounting annually by the trustee to the court, the cause is not "ended," and the decree is implied notice to those who deal with the trustee as to this property.—*Warsley v. Earl of Scarborough*, 3 Atkyns, 392; Herbert's Case, 3 Peere Williams, 116; *Earle v. Couch*, 3 Metc. (Ky.) 455, and cases therein cited; *Parks v. Jackson*, 11 Wend. R. 446, 453, 454, 459. *Lis pendens* continues even after decree, sale and conveyance; because the court of chancery is not *functus officio* until the decree is executed by delivery of possession."—*Jackson v. Warren*, 32 Illinois R. 332; *Waring v. Mayor of Mobile*, 24 Ala. R. 701; 1 Shoales & Lefroy's R. 438.

The decree here was in the nature of a decree appointing a person to carry on a trade or business for an infant, and to account annually to the court. Such decrees are pliable, and certainly do not put an end or conclusion to the matter; nor take away the character of *lis pendens*. Until the power of the court over the matter is exhausted by its exercise, the cause is not ended, and does not cease to be a *lis pendens*.—*Waring v. The Mayor of Mobile*, 24 Ala. R. 701; *Thompson v. Brown*, 4 Johns Ch. R. 627, and cases there cited; *Kershaw v. Thompson*, 4 Johns Ch. R. 609; *Earle v. Couch*, 3 Metc. (Ky.) Rep. 455, and the cases there

cited from 4 Dann. 95, and 9 B. Monroe, 228, 32 Illinois R. 332. No *laches* in the prosecution of the case is attributable to complainant; she was a married woman continuously, until after the sale to Dudley in 1851. The court and its trustee are responsible for the omission of the trustee to do his duties. The property was peculiar, and the circumstances also peculiar.—*Johnson v. Johnson*, 5 Ala. Rep. 97. *Laches* not imputable to infants or married women.—*Fears v. Brooks*, 12 Georgia Rep. 195, *et seq.*; *Bond v. Hopkins*, 1 Sch. and Lefr. 429, 420; *Nelson v. Allen*, 1 Yerger's R. 371, 375.

Dudley knew enough to put a prudent and careful man upon inquiry, and inquiry would have led him to the whole truth; therefore, he can not, in Alabama, be treated as a purchaser without notice. *Herbert v. Harrick*, 16 Ala. R. 597. In that case, our courts thus lay down the law: "Want of notice of a fact which is the result of a want of that diligence which the law requires for its ascertainment, furnishes no ground for its protection."—See, also, *Smith v. Zurcher*, 9 Ala. R. 208; *Scroggins v. Douglas*, 8 Ala. R. 382.

The evidence shows that Dudley knew the father of complainant; knew the land was his at his death; knew and was intimate with all the children, &c. Dudley knew far more than the purchaser in *Sterry v. Arden*, 1 Johns. Ch. R. 267, who was held to be a purchaser chargeable with notice. *Gimon v. Davis*, 31 Ala. R. 589, is decisive against Dudley as to constructive notice.

For the distinguishing peculiarities which mark a widow's claim for the allotment of her dower, such claim is not embraced without express mention by the general and sweeping words of the statute of limitations.—*Ridgway v. McAlpine*, 31 Ala. R. 458.

And so, and for like reasons, a decree of a court of equity, enforcing the wife's equity to a settlement, is not a case "where the right and title to property, whether real or personal, shall be decreed to either of the parties," within the meaning of the act of 1841.—Clay's Dig. 354, § 57.

That act (the act of 1841) extends only to cases where the dispute, the real contest between "the parties," is as to "the right and title to property"; for example, such cases as bills for specific performance of a contract as to property.—Clay's Dig. 350, § 29.

A bill to enforce a wife's equity to a settlement is not a case in which the contest and dispute can, with justice or reason, be said to be as to "the right and title to property." Such a claim rests not on contract, but it is a mere "equity." "This equity stands upon the peculiar doctrine of the court." "It rests upon the broad ground that in a court of equity it is regarded as her estate, which she has a right to have expressly set apart and secured, or such portion thereof as may be necessary for the permanent support of herself and children." The court, in such case, does not decree "the right and title to property" to the wife, but sets apart and secures to her what it views as her unquestionable property.—Legal and Eq. Rights of Married Women, by Cord, § 155, et seq.; Murray v. Ld. Elibank, 1 Leading Cases in Equity, and Hare and Wallace's Notes (Third American Edition), marg. pages 356, 394.

It seems monstrous to impute to the legislature of 1841 an intention to abridge or impair the efficacy of decrees of chancery courts in the exercise of their peculiar and original jurisdiction, setting apart and securing to married women a portion or the whole of their own property; or an intention to subject such provisions of such decrees, to be forfeited or lost by married women, who are not sui juris, for the mere omission of the court or its trustee or officer to record the same.

But independent of the foregoing view, as the father of complainant had died intestate, and her right as one of his heirs at law to her portion of his estate had accrued and attached before the passage of the act of 1841, it is certain that the legislature of 1841 did not possess any constitutional power to declare that the title of the wife to her property be divested for the want of registration," &c.— Edrington v. Manfield, 5 Texas Rep. 363; McCabe v. Emer-

*son,* 18 Penn. State Rep. 111 ; Sedgwick on Stat. and Cons.
Law, 196, 197 ; *Warick v. Paiggs,* 6 Paige, 332 ; 22 Wend.
549.

The act of 1841 has no retrospective operation.   It does
not effect or apply to a decree making a settlement for her
out of property which accrued to her from the death of
her father, intestate, before 1841.—*Thrasher v. Ingram,*
32 Ala. R. 645 ; *Sterns v. Weathers,* 30 Ala. 712 ;  Sedg. on
Stat. and Cons. Law, 194, 199.

This view of the act of 1841 is supported by the follow-
ing additional authorities, which speak directly upon the
proper mode of construing registry acts.   According to
these authorities, the decrees which are embraced by the
act of 1841 are such as are there substitutes for the ordi-
nary transfers of property "made by the act of the par-
ties, viz, from a former owner to a new owner ;" and de-
crees of a " peculiar " jurisdiction, and having by law a
peculiar effect, are not embraced.—3 Kent Com., 9th ed.,
149 ; *Bloxom v. Hubbard,* 5 East, 422 ; *Yallop, ex parte,*
15 Vesey, 68 ; *Curtis v. Perry,* 6 Vesey, 740, 746.

The right here asserted by complainant is not derived
from any grantor of Dudley, but (through the court of
equity and the law of the land,) from her deceased father,
a source above and independent of any grantor of Dudley.
*Stuyvesant v. Hall,* 2 Barb. Ch. 151.   True, by our statutes
of descent and distribution, the grantor of Dudley, from
the death of complainant's father up to the original decree
in favor of complainant, (in 1843,) had an undivided in-
terest with complainant and the other heirs-at-law of her
father, in the whole of the estate of her father, the whole,
until then, being undivided.   But until that decree, neither
complainant nor any grantor of Dudley had any specific
right or title to the specific portion which, by that decree,
was set apart for complainant ; and that very decree also
set apart to the grantor of Dudley, and to each of the
other heirs, and the widow, their respective portions of the
whole estate, and thus extinguished the entire right of
each heir, and of the widow, to every part of the estate
except the particular portion set apart to him or her.

That decree made compensation to each heir for this extinction of his undivided interest in the whole estate, by setting apart to each, in lieu thereof, specific and equal portions in severalty. After that decree, the grantors of Dudley had no right whatever to the portion set apart to complainant, except such right as the decree may have conferred upon Hamlin F. Lewis as the trustee therein appointed by the court for complainant. Dudley purchased after this decree, and did not purchase from any grantor of complainant. It is only the creditor of, or purchaser from, such grantor, (a grantor of complainant,) that can raise against her the question of registration. It is only the interest of such grantor that can be reached, even where the want of registration operates most strongly. *Edrington v. Mayfield,* 5 Texas, 363; 24 U. S. Dig. 176, §§ 44, 47; *ib.* 177, § 68.

Even if Dudley's grantors had a partial interest of two-sevenths, he would still be a purchaser with notice of the other five-sevenths, and therefore a purchaser with notice *in toto.*—*May v. Nabors,* 6 Ala. ——, and cases therein cited. The law does not recognize any such thing as a purchaser with notice as to only part of one entire tract held under the title of the same intestate by his heirs at law.— 25 U. S. Dig. 514, §§ 13, 14. If the purchaser had notice as to part, that made him, in law, a purchaser with notice as to all of the tract, and all of the common interests of the heirs therein.

If there was any duty to register the decree, that duty was not upon the complainant, a married woman, not *sui juris,* but was upon the court, its officer, or the trustee appointed by it. The omission to register the decree can not operate as a forfeiture of her estate, especially as her right accrued before the act of 1841, and at the death of her father. The purchaser from her trustee can not thus claim by forfeiture. The act of 1841 can not give him a greater interest than his grantors had, which was nothing but that of a dry trustee for complainant.

The particular facts stated by Dudley in his deposition, especially in his answer to the complainant's cross-interro-

gations, were sufficient to put him upon inquiry which would have led him to the whole truth. Dudley was related to, and intimate with the father of the complainant, and all the children, for many years. He knew her father died the owner and possessor of the land in controversy. He knew her father left seven children ; that Hamlin F. and complainant were two of them; that complainant was the youngest, and was a minor at her father's death, and afterwards at her marriage with Lampkin. When, therefore, Hamlin F. Lewis offered to sell him the land, and claimed to be sole owner, Dudley ought to have inquired how he became sole owner, and how complainant had lost or parted with her right as an infant heir.

The defendant Dudley must be held to the title under which he entered. —*Bond v. Hopkins*, 1 Sch. & Lefr. 420. He must be held to the purchase which he actually made. His own answer shows that, in fact, he did not know of, or buy under, the order of sale made at the June term, 1846 ; and he is by that answer, as well as by the settled law, *concluded* from resorting to that order to sustain his purchase. This point is entirely closed against Dudley by the decision of this court at its January term, 1868, in the *Annual Conference of the Methodist Church v. Price*.

Another fatal objection to allowing Dudley any benefit from that order, is, that the power of sale in it is, upon the face of the order, limited to the term of the court next after the order. It closes by ordering the master to report at the next term of this court what shall have been done in the premises, &c. It is well settled that a bar by lapse of time may be implied.—*Hollinger v. Holly*, 8 Ala. R. 459; 8 How. U. S. A. 163.

The provision in that order is " systematic, " and, therefore, it must "be so construed that all its parts may take effect."—*Ives v. Lynn*, 7 Conn. R. 514. The part which required a report at the next term of what had been done in the premises, could not have effect unless the sale was to be made before that term. See, also, *Lessee of Ward v. Barrows*, 2 Ohio State R. 250, 251.

B. F. SAFFOLD, J.—In this case the appellee sought to require the appellant, Dudley, to surrender to her a certain tract of land in Lowndes county, and to account for the rents and profits thereof, from the time he received possession. Dudley obtained possession of the land in 1851, under a deed from Hamlin F. Lewis and wife and Robert Scott and wife, conveying it as their own property to him in fee simple, and warranting the title, for valuable consideration. The appellee claims that this land was a part of the estate of her father, Francis Lewis, and was set apart to her under a partition of her father's estate, effected by the chancery court at her instance, in 1843, and secured by decree to her sole and separate use for her life, with remainder to her children; that, by the said decree Hamlin F. Lewis was made her trustee, she being married, and having possession of the property as such only, he made an unauthorized sale to Dudley. Dudley replies to this that at the time of his purchase Lewis was in possession of the land, claiming it as his own, and he knew nothing of the claim of the appellee until long after he had paid for it. He further insists that in 1846 the appellee and her trustee, Lewis, on their own application, obtained authority from the chancery court to sell the land, and although he did not know of this at the time of his purchase, Lewis did have authority to make the sale to him, and to convey titles, and under the circumstances, especially of the appellee's neglect to assert her right when he might have secured himself, he ought to be protected. The appellee responds to this that the sale was not made under the decree of 1846, and before and at the time of the sale, and for some time afterwards, she was residing with her husband in Mississippi, and therefore involuntarily absent from the State; but on the death of her husband, Lampkin, she returned and commenced proceedings at once for the recovery of the land, before any statute of limitations had barred her right todo so.

The proof establishes, that the land in question belonged to Francis Lewis at the time of his death; that under the decree of 1843 it was allotted to the appellee as a part of

her distributive share; that she and her husband, Lampkin, occupied it from that time until 1846, when they removed from the State; and that Hamlin F. Lewis, who was her trustee under the decree of partition, then went into possession, and so continued until, under his sale to Dudley, in 1851, it was transferred to the latter. It is also sufficiently proven that Dudley had no actual notice of the claim of the appellee, and supposed he was obtaining a fee simple title, for which he paid a valuable consideration.

The following questions are presented : 1. Did the decree of 1843 divest the title of the other heirs of Francis Lewis out of this particular portion of his estate, and vest it in the appellee, her children and her trustee ? 2. Was it necessary to the validity of this decree that it should have been recorded in accordance with the proviso to the statute (Clay's Dig. p. 354, § 57,) respecting decrees, which vested the right and title to property without a deed of conveyance ? 3. Was Dudley a purchaser for valuable consideration without notice ? 4. Should the sale to him in 1851 be referred to the authority given to the trustee, Lewis, by the decree of 1846 ; and if not, what is his position concerning the matter ?

It has been twice decided by this court, that the title to the property in controversy became, by the decree of 1843, vested in Lewis in trust for the appellee, to her sole and separate use for life, with remainder to her children. *Witter v. Dudley*, 36 Ala. 135 ; *Same v. Same,* 42 Ala. 616. There can be no doubt of the correctness of these decisions. The right to an equitable settlement out of her own property, against her husband, his assignee, &c., before reduced to possession, is inherent in the wife, of which the court of chancery has undoubted jurisdiction.—Spence Eq. Jur., vol 2, 482, 492 ; 2 Story's Eq. Jur. § 1404–1420. Such a settlement having been made, the appellant, whose interest in the matter accrued long afterwards, can not be heard to impeach its validity in this collateral proceeding.

Whether the decree of 1843 was one on which rested the right and title of property or not, its validity does not at all depend on its being recorded. The recording was

designed to give notice as in case of deeds and other conveyances.

A decree is not implied notice to strangers after the case is ended.—Sugd. on Vend. § 1047. · The decree of 1843 was not recorded in the county court office. Dudley had no actual notice of the appellee's claim to the property. It is insisted, however, that the requisition upon the trustee to account annually in the matter of the separate estate specifically described in the decree, was a *lis pendens* at the time of Dudley's purchase. *Lis pendens* in a chancery suit begins with the filing of the bill and service of subpœna, and continues until the final orders are taken in the case.—*Centre v. P. and M. Bank*, 22 Ala. 743. The settlements made from time to time by a trustee of his trust can not be said to be the pendency of a suit, especially in a case like this, where none had ever been made.—Sugd. on Vend. 1046.

As there was nothing of record sufficient to charge Dudley with notice of the appellee's rights, was there any thing existing in parol which should have that effect? In *Sterry v. Arden,* 1 Johns. Ch. R. 261, a purchaser for valuable consideration was charged with constructive notice of a voluntary settlement, because before the execution of his deed he had heard that the grantor had made some provision for his daughters out of property in Greenwich street, and there was no evidence that the grantor owned any other property in that street, except the lots included in the settlement. In *Johnson v. Thweatt*, 18 Ala. 741, a purchaser was charged with notice that a deed of trust under which his vendor derived title was fraudulent. A purchaser must be bound to inquire whether, beyond his own declarations, his vendor has any title to the property he is selling. Otherwise it would be in the power of any agent, tenant or mere trespasser to deprive the owner of his property by a sale. To entitle himself to protection the purchaser must have purchased the legal title, and not be a mere purchaser without a semblance of title.—2 Story's Eq. Jur. § 1502.

It is proven that Dudley knew this land belonged to

Francis Lewis at his death, and that there were several heirs of his estate. He might have supposed that it belonged to Hamlin F. Lewis, as he was in possession of it and was one of the heirs, and it was about the proportion which one would have been entitled to. But he certainly knew that if this was the case, there must be some agreement between the heirs, or some decree of the probate or chancery court to that effect. It was not in evidence that Lewis' claim to this land as his own was open and notorious. The character of his possession must therefore be referred to the capacity in which alone he had a right to claim it. If in that capacity he had authority to sell it, apparent on his title, Dudley may claim the benefit of it; but he must be charged with notice that Lewis held as the trustee of the appellee.

It is unnecessary to determine whether the decree of 1846 for a sale conferred a power on the trustee, as such, or only as an officer of the court. It is sufficient that the intention was manifest, from the application, the terms prescribed, and the duties imposed on both the trustee and the register, that the power of sale was to be exercised within a reasonable time, and was not a continuing power, attached to the trust, and capable of exercise at any time during the existence of the trust estate.

The sale to Dudley was certainly not made in execution of the power and in pursuance of the decree. His deed and his own testimony forbid the assumption. Nor can it be referred to that authority after the lapse of five years therefrom, especially without positive proof that it was so intended by both the trustee and the *cestui que trust.—Price v. Meth. An. Conf.* 42 Ala. 39–50.

There is no evidence that the appellee ever concurred in or sanctioned the sale, or received any part of the proceeds.

It results, from what has been said, that Dudley bought no title whatever from Lewis, either legal or equitable, because the latter, at the time, had no authority to sell.

Shall Dudley be held to have been a trustee for the appellee, and liable to account to her for the rents and profits

of the property from the time he obtained possession of it ? Is it an imperative rule that he must be regarded either as a *bona fide* purchaser without notice, or as a trustee *in invitum*. The pervading excellence of equity jurisprudence is, that it varies its adjustments and proportions so as to meet the very form and pressure of each particular case. 1 Story's Eq. Jur. § 439.

The test applied by vice-chancellor Wigram in the case of *Jones v. Smith*, 1 Hare, 43, to distinguish the cases in which a purchaser should or not be charged with notice, seems to present a safe rule for determining when a purchaser charged with constructive notice only of a trust, should be treated as a trustee *in invitum*. When the party has incautiously neglected to make inquiries, or has not designedly abstained from such inquiries for the purpose of avoiding knowledge—a purpose which, if proved, would clearly show that he had a suspicion of the truth, and a fraudulent determination not to learn it. If, in short, there is not actual notice that the property is in some way affected, and no fraudulent turning away from a knowledge of the facts which the *res gestœ* would suggest to a prudent mind ; if mere want of caution, as distinguished from fraudulent and willful blindness, is all that can be imputed to the purchaser, then he should not be charged as a trustee *in invitum*. If we add to this the neglect of the appellee for several years to look after her interest, we think in good conscience the rule of law should be applied to this really equitable action of ejectment.—Rev. Code, § 2617 ; *Ormond v. Martin*, 36 Ala. 598.

The terms imposed for the continuance granted to the defendant are unusual. This is a matter of discretion, and not reviewable within the purview of the law conferring the power. But a distinction should be drawn between the imposition of terms, and the requisition of conditions amounting to an improper and unjust abuse of the discretion. This latter the superior court ought to remedy on appeal.—*M. & W. P. R. R. Co. v. Persse, Taylor & Co.*, 25 Ala. 536 ; *S. & N. Ala. R. R. Co. v. Falkner*, 44 Ala. 654.

In this case, however, the terms were accepted, without objection, by the defendant, and may have been proposed by him.     •

The other assignments of error need not be considered. The case must be sent back, that the account may be taken, in conformity with this opinion.

The decree is reversed, and the cause remanded.

[NOTE BY REPORTER.—At a subsequent day of the term, appellee applied for a modification of the opinion, so as to charge appellant with the rents from the time he had actual notice, &c.   The following response was made by—]

B. F. SAFFOLD, J.—The appellee asks that the opinion in this case be modified so as to charge the appellant with the. rents and profits of the lands from the time he had actual notice of her rights.

To do this, would be to depart from the principle on which the appellant was held not to be a trustee *in invitum.* The purchase of property, or payment for it, after notice of another's right, is culpable, and renders the purchaser liable as a trustee for the real owner.   But notice after payment should not have such effect.   The act from which the ill consequences to him are to flow, is past.

The application is denied.

NOTE.—This case was decided at the January term, 1870, and then held under advisement on application for modification of opinion by appellee, and for re-hearing by the appellant, until June term, 1870.   The record did not come into Reporter's hands in time to appear in either of the preceding volumes.