# JOHNSON vs. THWEATT.

1. Where the court cannot clearly see that a deed is fraudulent on its face, it may submit to the consideration of the jury, as well the suspicious provisions of the deed, as the evidence that may be adduced to explain them, or to show the fraudulent intent; but if it be apparent from the deed itself that the object and design of its execution were to hinder, delay, and defraud creditors, the court is bound to pronounce it null and void.

2. L., being largely indebted, and having taken judgments, that had been rendered against him, to the Supreme Court for delay merely, executed to D. a deed of trust, to secure the payment of a debt of one hundred and fifty dollars due by him to C., and to indemnify C. and another as his sureties on certain debts, some of which were due, and others running to maturity. The property conveyed was of much greater value than the aggregate of the debts intended to be secured, and consisted of land, slaves, horses, cattle, cotton, lumber, house-hold and kitchen furniture, and a stock of goods, together with all the debts due the grantor, by note or account, and amounting to more than seven thousand dollars. The deed provided that L. should remain in the possession of all the property, both real and personal, including the debts, and take the profits thereof to his own use, until default should be made in the payment of the debt due to C., or until C. and his co-surety should be compelled by law to pay any of the debts for which they were bound, upon the happening of either of which contingencies, D. was authorised to sell for cash all, or as much of the pro-

perty as might be sufficient, first giving twelve months notice of such sale, and from the proceeds to pay the debt due to C., or such part thereof as remained unpaid, and also such sums as C. and his co-surety, or either of them, had been compelled to pay, and the surplus, if any, after defraying the expenses incurred in the execution of the trust, was to be paid over to L., the grantor. *Held*—That the deed, as against the creditors of L., is fraudulent and void on its face.

3. A purchaser is chargeable with notice of every deed, which constitutes a necessary link in his chain of title, and if any such deed be clearly fraudulent on its face, he is not entitled to protection as a *bona fide* purchaser without notice.

4. A deed for land, fraudulent on its face as against creditors, being void, a judgment afterwards rendered against the grantor creates a lien, of which a subsequent purchaser from the grantee, and those claiming under him, are chargeable with notice, in the same manner, as if the purchase had been made directly of the original grantor.

ERROR to the Circuit Court of St. Clair. Tried before the Hon. Thos. A. Walker.

RICE & MORGAN, for the plaintiff in error.

J. B. MARTIN, for the defendant.

DARGAN, C. J.—This was an action of trespass to try titles to a tract of land, described in the pleadings. Upon the trial, the plaintiff took a bill of exceptions, and the cause is brought here by writ of error. The title of both parties may be briefly stated. The plaintiff recovered a judgment against Robert Lawson, on the 8th day of November 1830, for a sum over two thousand dollars; on which an alias execution issued the 2d of April 1847, and the land in controversy was levied upon and sold by the sheriff, as the property of Lawson, and the plaintiff became the purchaser. On the same day that the judgment was rendered, to-wit, the 8th of November 1830, Robert Lawson conveyed the land and other property by deed of trust to Dill, to secure Joel Chandler in the payment of a note of one hundred and fifty dollars, and further to secure from loss said Chandler and Daniel Coleman, who, with others, had become security for Lawson for the payment of several debts, some of which were due and others running to maturity. Dill resigned the trust, and Baker, who was appointed trustee in his stead, sold the land in the year 1833 to Beavers, who, in 1835, sold it to the defendant. These sales appear to have been

made for a valuable consideration, and without any actual fraudulent intent. This statement of the respective titles gives rise to two questions: First, whether the deed of trust from Lawson to Dill is fraudulent upon its face; and, secondly, whether the defendant is chargeable with notice of the fraud. The deed conveys the land in controversy, two female slaves, five horses, a stock of cattle and hogs, thirty thousand pounds of cotton, some lumber, all the grantor's house-hold and kitchen furniture, together with a stock of goods, and all the debts due the grantor by notes, and for the sale of goods, a schedule of which is attached to the deed, and amount to more than seven thousand dollars, in trust to secure Joel Chandler in the payment of his debt of one hundred and fifty dollars, and to protect Chandler and Coleman against liability, as the securities of Lawson on the debts enumerated in the deed, the judgment through which the plaintiff claims not being one of them. The deed then provides, that Lawson should remain in possession of all the property, both real and personal, as well as of the debts, and take the profits thereof to his own use, until default should be made in the payment of the debt due to Chandler of one hundred and fifty dollars, or until Coleman and Chandler, or one of them, should be compelled by law to pay any of the debts for which they were bound as Lawson's securities; and after such default in the payment of the debt due to Chandler, or after Chandler and Coleman were compelled by law to pay any of the grantor's debts for which they were bound, Dill was authorised to sell all the property, real and personal, together with all the debts named in the schedule, for cash, or such part thereof as he might deem sufficient, *first* giving twelve months notice of the time and place of sale, and from the proceeds thereof to pay all of said debt to Chandler of one hundred and fifty dollars, or so much thereof as remained unpaid, and also such sums as Chandler and Coleman, or either of them, had been compelled to pay, and the surplus, if any, was to be returned to the grantor, after defraying the expenses of executing the trust. Lawson, Dill, Chandler and Coleman signed the deed, but no one else, nor does it appear that any other creditors named in the deed ever assented to it. These are the material features of the deed, which present the question, whether it is fraudulent and void as against the creditors of the grantor.

Every conveyance, whether it be in the nature of an assign-ment or a mortgage, must be void in law, if the deed shows up-on its face that the design and intention of the grantor was to hinder, delay and defraud his creditors. To hold otherwise would be to disregard the commands of the Statute.—Clay's Dig., 254. But it is often a question of intrinsic difficulty to determine from the terms of the deed itself whether it is con-clusively fraudulent, or whether its provisions, though some-what suspicious, may not be consistent with good faith. If the provisions of the deed be of the latter character, and the court cannot clearly see, by an examination of it, the intent to defraud creditors, it may submit the question of intent to the jury, who will take into consideration, not only such suspicious provis-ions, but also the evidence that may be offered to explain them, as well as that to fix the fraudulent intent on the deed.—Ber-gin v. Bergin, 1 Ired. 453. But when it is apparent from the deed itself, that the object and intent of its execution was to hinder, delay, and defraud creditors, the court has but the one duty to perform; that is, to declare it null and void. After the best examination we have been able to bestow upon the instru-ment before us, we are constrained to hold that such must have been the intention of Lawson, the grantor. We do not, however, intend to place our opinion upon any one term or pro-vision of the deed, and to declare that this term, or provision, will render void this, and all other deeds which may contain it. But our opinion is founded upon the whole instrument, and combining *all the objectionable features together;* for when this is done, the fraudulent character of the deed cannot be mista-ken. First, it is apparent from the deed itself, that the grantor was deeply indebted; some of the debts had gone into judg-ment and been carried to the Supreme Court for delay, but no liens at the time of its execution existed against the property; the deeds conveys property and debts, in value and amount much more than is sufficient to pay all the debts owing by the grantor, and which were enumerated and intended to be secured by the deed; the grantor reserves to himself the possession, use and profits of all the property, as well the merchandize and debts, as the other personal and real estate, and the law day of the deed is fixed at no certain time; and if the small debt of one hundred and fifty dollars was paid, then there could be

no default until Chandler and Coleman, or one of them, had been compelled under legal process to pay some of the debts for which they were security. Let us examine these provisions. The use and profits of all the property, until default, were reserved to the grantor. What, in the meantime, was to become of the merchandize on hand? It would be unreasonable to suppose it was not intended that it should be sold; and if so, the money received from the sale would come into the hands of the grantor, and there is no express provision in the deed that he should account therefor to the trustee. It must be presumed, also, that it was not the intention of the parties that the grantor should refuse to collect the debts, if payment could be received; he must have reserved the possession of them for that purpose. He then retains the full use and control of all the effects assigned, until his securities should be compelled by law to pay the debts enumerated in the deed, and even when this event should happen, the trustee could not sell until he had given twelve months notice by advertisement. This latter provision, in connection with the others, and the character of a large portion of the property conveyed by the deed, fixes upon it the intention to hinder, delay and defraud the creditors of the grantor. Why require notice of the time and place of sale to be given for twelve months? We can give no other answer than this, that the grantor might be enabled from the proceeds of the debts and goods to pay off the debts named in the deed, and reserve the property to himself; or, if this could not be done, then to have the use and profits of the property, at least until the time of sale. But another view is presented: Suppose the debt of one hundred and fifty dollars to Chandler paid at maturity, and which would seem an easy matter, from the quantity of goods and debts left by the deed in the possession of Lawson, and of which he had the control and the use, and then suppose Chandler and Coleman could not, or were not compelled by legal process to pay the debts for which they were security, when could the trustee sell? Never; and thus the grantor would be left in the quiet and undisturbed possession of the property. Provisions leading to such results, when grouped together, fix upon the face of the deed the impress of fraud—a premeditated design to hinder and delay creditors, and must render it *void*. It is, however, insisted that deeds have

been sustained by this court, the features of which were equally as objectionable as those in the deed under consideration, and we are refered to the cases of Elms v. Sutherland, 7 Ala. 262, and Dubose v. Dubose, ib. 235. But we think there is a marked distinction between those cases and the case now before us. In the case of Elms and Southerland, the deed was to a trustee to secure certain creditors, some of whose debts were due and others were running to maturity; and it provided that the grantor should retain possession of the property, until the day fixed thereby for the sale, which was the first of April 1845, but the profits arising from the property, from the date of the deed, which was executed the 14th day of April 1842, were to be appropriated to the payment of the debts. Here the time of the sale was fixed, and the deed devoted all the property, as well as the profits, to the payment of the debts. In the case of Dubose v. Dubose, the deed authorised the trustee to sell as soon as it might become necessary to protect any of the parties intended to be secured by it, or on the request of all, *or either of them*. The trustee was also authorised to take immediate possession of all the property, and to apply the profits arising therefrom to the payment of the debts. Neither of these deeds bore conclusive evidence upon their face of the intent to defraud the creditors of the grantor; and I do not intend to lay down any fixed rule and say, that a particular provision or feature in a deed shall in all cases be deemed conclusive evidence of fraud, when the deed is not a general assignment for the benefit of creditors, but is intended as a security for particular debts, or to protect particular individuals. All I intend to say is this; that if from the whole deed the intent to defraud, hinder, and delay the creditors of the grantor is manifest; if the mind can come, by a course of reasonable argument, to no other conclusion, the court is bound to pronounce the deed fraudulent and void; and when we read the deed before us and consider the character of the effects conveyed thereby, the propriety, and even necessity, of converting some of them into money, as well as to collect the debts that were due, the right reserved to the grantor, under the provisions of the deed, to the possession of those funds and all the profits arising from the property, the postponement of the right of the trustee to sell until the securities had been compelled by legal process to

pay the debts; and even then requiring the trustee to give twelve months notice before the sale, we cannot come to any other conclusion, than that the grantor intended by the execution of the deed to hinder, delay and defraud his creditors.

The next question we propose to examine is, whether the defendant is chargeable with notice of the fraud. The principle is well settled, that when a purchaser cannot make out his title but by a deed which leads him to another, he cannot be a purchaser without notice of this other deed, and of course of all its provisions. A purchaser has the right to call for and examine the chain of title to the land he is about to purchase; and if he neglects to do this and purchases without seeing the deeds, through which he is to receive title, it is his own folly; in the language of the authorities, it is *crasa negligentia*, and he cannot protect himself from the consequences of notice, by insisting upon his own folly, or neglect.—Marr v. Bennett, 2 Ch. Cases, 246; Thompson v. Blair, 3 Murphy, 591; 2 Brown's Ch. Cases, 291; 1 Yerg. 366; 1 Story Eq., § 400, page 427. The defendant is, therefore, chargeable with notice of the deed of trust; for he derives title under it, and consequently with notice that it was fraudulent and void against the creditors of the grantor. But it is contended that the construction of the deed is a question upon which different minds might come to different conclusions, and in this case, the purchasers may have in fact believed that the deed was valid, and without any fraudulent intent whatever on the part of the grantor. I feel the force of this argument. But after the best reflection that I can bestow upon the question, I am constrained to hold that all who claim through a fraudulent deed, when the fraud is apparent on the face of the instrument, must be charged with notice of the fraud, otherwise we could lay down no rule upon the subject, and in determining whether one was chargeable with notice or not, we should have to take into consideration, perhaps, the mental capacities of those sought to be charged with notice. Judge Story says that a mistake of law in the construction of a deed cannot discharge a purchaser from the legal consequences of notice; yet there may be a case of such doubtful equity, under the circumstances, that it ought not to be enforced against such a purchaser.—1 Story Eq., § 400, page 430. Now I

will not say that a purchaser shall be charged with a notice of the fraud, if the provision of the deed merely throws suspicion upon the transaction, which is capable of being explained by proof, and thus shown to be consistent with good faith; that question, however, is not before us. But when the impress of fraud is conclusively fixed upon the deed, from its own provisions, a purchaser cannot escape from the consequences of notice. It is also contended, that, as the deed itself does not show that the plaintiff was a judgment creditor of Lawson, at the time of the sale by the trustee, the defendant had no notice of the judgment, and his title cannot be affected by it. But as the deed is fraudulent against creditors, as to them it is void, and the judgment created a lien on the land from the time of its rendition; and the purchaser being charged with notice of the fraud, must also be charged with notice of all judgment liens on the land, at the time of his purchase, in the same manner as if he had purchased directly of Lawson. In reference to the question whether the lien of the judgment was lost by lapse of time, and what would be the consequences, if it was, we need only say, these questions were not raised in the court below, nor are they presented by the bill of exceptions for our revision. In conclusion, it may be remarked, that although this deed was before this court, in the case of Cunningham and Johnson, 1 Ala. 247, the cause did not go off upon the construction of it, and the remark made by the judge in reference to it shows clearly that the provisions of the deed had not been considered by the court.

Let the judgment be reversed, and the cause remanded.

CHILTON, J., not sitting.