## BUNKLEY ET AL. *vs.* LYNCH, PRO AMI.

[BILL IN EQUITY IN NATURE OF BILL FOR FORECLOSURE OF MORTGAGE.]

1. Mrs. L. joined her husband in a promissory note for her husband's debt for $2,000, and also in a mortgage on her lands of her separate estate, derived from the will of her father since the passage of the Code, to secure the payment of said note to E. K. & Co.; afterwards Mrs. L. and her husband sold said lands to R. for $6,000, and R. was to pay the $2,000 mortgage debt; R. then sold the same lands to B., and B. also undertook the payment of said mortgage debt to E. K. & Co. But R. and B. failed to pay said mortgage debt, and thereupon the surviving partner of E. K. & Co. filed his bill against Mrs. L. and ·her husband to foreclose the mortgage and to collect the mortgage debt. In this suit he failed, and the mortgage and note were held to

be void as to Mrs. L.,—*Held*, that after the defeat of the mortgage, the $2,000 (the amount of the mortgage debt,) left in R.'s hands to pay this debt, was the separate property of Mrs. L.. which was secured to her by a vendor's lien in her favor on said land, and she could file her bill in chancery by her next friend against her husband and B , who was in the possession of said land under R.'s deed, to enforce her lien for said $2,000 so left in the hands of R. as above said.

APPEAL from the Chancery Court of Montgomery. Heard before Hon. ADAM C. FELDER.

The facts are sufficiently stated in the opinion.

STONE, CLOPTON & CLANTON, for appellants.
WALKER & MURPHEY, *contra*.

PETERS, J.—This is a suit in the nature of a suit for foreclosure, and it is founded on a certain instrument in writing, executed by the complainant in the court below, Mrs. Mary K. Lynch and her husband, to one Reading. It is in the words and figures following, to-wit: "The State of Alabama, Montgomery county. Indenture witnesseth, that in consideration of the sum of six thousand dollars, to us in hand paid by Edward M. Reading—the receipt whereof is hereby acknowledged,—We, Frank Lynch and Mary W. K. Lynch, his wife, all of said county, have, and do hereby grant, bargain, sell, convey and confirm unto the said Edward M. Reading the following described lands, secured to the sole and separate use of the said Mary W..K. Lynch under the will of her father, William K. Buford, deceased, and which lands are in the county aforesaid; that is to say, the south-west quarter, the west half of the south-east quarter, the west half of the north-east quarter, and the east half of the north-west quarter, all in section five (5), and containing 437 20-100 acres. Also, the north-west quarter, and the west half of the north-east quarter of section eight (8), containing two hundred and sixteen 42-100 acres, all in township fifteen (15) and range nineteen (19). To have and to hold to the said Edward M. Reading, and to his heirs and assigns forever.

"And, with the exception of a mortgage on said lands,

executed by us on the 15th day of January, 1866, to Eben Kirk & Co., to secure the payment of two thousand dollars due them by us on the 15th day of April, 1866, and which debt the said E. M. Reading binds himself to pay to said Eben Kirk & Co., without any claim or recourse on us, we do covenant with the said E. M. Reading, his heirs and assigns, that the said Mary W. K. Lynch is lawfully seized and possessed of said lands; that they are unincumbered; that we have a good right to sell and convey the same to the said E. M. Reading, his heirs and assigns; and the title and quiet enjoyment of the same to the said E. M. Reading, his heirs and assigns, we do warrant and will forever defend against the lawful claims and demands of all persons.

"Witness our hands and seals, — day of —, A. D. 1866.

FRANK LYNCH,    [Seal.]

"Witnesses,                          MARY K. LYNCH, [Seal.]

Turner Clanton,

David Campbell."

[STAMPS.]

This instrument was properly acknowledged before the judge of probate of said county of Montgomery, on the 13th day of August, 1866, and recorded as required by law on the 9th day of November following.

In connection with the execution of the foregoing instrument, it is also alleged that Lynch and wife executed the mortgage therein mentioned, and that in a suit in chancery by Micou as the surviving partner of the firm of Eben Kirk & Co., against said Lynch and wife, and others, seeking a foreclosure of said mortgage for the purpose of enforcing the payment of the debt therein mentioned, the mortgage and promissory note for the security of said debt of two thousand dollars in favor of Eben Kirk & Co. was declared null and void, and the suit for foreclosure failed as to Mrs. Lynch. It is also alleged, that after the making of said mortgage and the execution of the above cited conveyance to Reading, Reading sold the lands mentioned in said conveyance to Bunkley, on the 31st of December, 1866, and in Reading's deed to Bunkley the same lands are conveyed

that are conveyed by Lynch and wife to Reading, and
Reading warrants the title of said lands, " and the quiet
enjoyment of the same against the claims of all persons
whatsoever, except a mortgage on said lands executed by
Frank Lynch and Mary K. Lynch, on the 15th day of
January, 1866, and which debt the said Gordon S. Bunkley
agrees to pay." The mortgage and note, the conveyance
of Lynch and wife to Reading, and Reading's deed to
Bunkley, and Mrs. Lynch's answer to the bill filed by
Micou, are made exhibits to the bill in this case. It is
also alleged that the consideration of the conveyance from
Reading to Bunkley was a certain interest in the stock and
goods of a drug store owned by Reading, and that Mrs.
Lynch received no part of this consideration, and had no
interest in it. It also appears that Mrs. Lynch owned and
possessed a separate estate, which is referred to as a con-
tract estate. Bunkley died, and his wife administered on
his estate. These are all the allegations of the bill. The
prayer is, that the lands mentioned in the conveyance from
Lynch and wife above set out " be sold, and a portion of
the proceeds of such sale, equal to the value of said mort-
gaged interest hereinbefore reserved, be paid " to Mrs.
Lynch, and for general relief. The mortgage and promis-
sory note to Eben Kirk & Co., the deed of Lynch and wife
to Reading, and Reading's deed to Bunkley, and also Mrs.
Lynch's answer to the bill filed by Micou, and the docu-
ments showing Mrs. Lynch's title to the lands sold to
Reading, are made exhibits to her bill. The bill is filed in
her name by her next friend, and her husband is made a
party defendant. The bill is to foreclose a vendor's lien
in favor of Mrs. Lynch.

Mrs. Bunkley, in her own name and in her representa-
tive character as the administratrix of her husband's
estate, answered the bill, and demurred to the same for
want of equity.

The learned chancellor overruled the demurrer, and de-
creed for the complainant, and ordered a reference to the
register to take an account and report as instructed. The
defendants below appeal from this decree, and bring the

case here, and assign the overruling of the demurrer and the chancellor's decree as error.

The exhibits to a bill in a suit in equity are a part of the bill itself, and whatever is found in them must be taken as a part of the statement of the facts on which the suit is founded.—Revised Code, § 3327; ib. p. 825, Rule in Chan. No. 17. So far as they are admitted facts or allegations undenied, they are to be taken as true. Whatever, then, is found in the mortgage and promissory note to Eben Kirk & Co., in the deeds to Reading and to Bunkley, and the answer of Mrs. Lynch to Micou's bill, are allegations of facts in the pleading, and if admitted ·or proven, they must be so treated, as they are exhibits in this case.

A conveyance for the sale of lands is a declaration, or series of propositions by the vendor to the vendee, touching the thing sold or intended to be sold.—*May v. LeClaire*, 11 Wall. 217, 228; 1 Pars. Contr. p. 8. If it is delivered to the vendee, and he accepts it, he must be presumed to acquiesce in and consent to all its recitals. And it must be accepted as a whole, or not at all. Therefore, to ascertain its proper construction, and the real purpose of the parties to it, its entire contents may be looked to. In this State it must be in writing, or printed, "on parchment or paper, and *signed at the foot* by the contracting parties." It must also be executed with the formalities prescribed by law.—Rev. Code, §§ 1, 1535, 1536, 2373; *O'Neal v. Robinson*, 45 Ala. 526. If, within these limits, it is intelligible, is made upon legal consideration and by parties competent to contract, it is sufficient, whatever form of words may be used.—1 Kent, 450; Revised Code, § 1569. In such an instrument, the part which preceded the *habendum* at common law was called the *premises*.—*Sumner v. Williams*, 8 Mass. 174. This contained the subject-matter of the conveyance, and could not be contradicted by the subsequent parts of the instrument, though it might be so explained and qualified.—*Manning v. Smith*, 6 Conn. 289; *Wager v. Wager*, 1 S. & R. 375. Here the exception which precedes the warranty comes after the *premises* and after the *habendum*. The conveyance passes a fee simple estate

in all the lands mentioned therein. The exception, then, can not be a limitation on the quantity or the title of the lands intended to be sold. This would be a contradiction of the premises, which is not to be allowed, if there is any other construction which the intention of the makers of the instrument will admit.—4 Bac. Abr. Bouv. ed. p. 212, C., *et seq.; Jackson v. Beach,* 1 Johns. Ch. Cas. 399 ; Shep. Dig. p. 497, §§ 124–25. The exception, then, must be applied to the warranty. This makes the whole instrument consistent with its purpose and the facts recited in it. The vendors intended to convey all their title to all the land named in the contract of sale, and they were able to warrant the title, except against the mortgage. This they do ; and a rational construction of the language used, and its connection, shows.that this was all they proposed to do.

The next question that presents itself is this : What was the consideration for the sale, as appears from the recitals of the deed from Lynch and wife to Reading, which is quoted above? Was it six thousand dollars, which was received at the delivery of the deed, or was it six thousand dollars and also the payment of the mortgage debt of two thousand dollars to Eben Kirk & Co. besides? In other words, was the payment of the mortgage debt reckoned as a part of the price of the land? The recitals of the deed show that Reading had paid the six thousand dollars of the purchase-money, and that he agreed also to pay off the mortgage debt of two thousand dollars to Eben Kirk & Co., in addition. It can hardly be presumed that he agreed to pay this mortgage debt *sans recourse* on the mortgagors, without any consideration, merely for their accommodation,—in effect, that he intended to give them two thousand dollars above the price of the lands; because, this would be the purport of his agreement as recited in the conveyance, unless Lynch and wife furnished him the means to pay the mortgage debt out of the value of the lands sold, over and above the money paid at the delivery of the deed. If Reading had intended to take the lands incumbered with the mortgage on payment of the six thousand dollars, he would not have agreed to pay

the mortgage debt besides. And he would not have agreed to satisfy the mortgage debt, unless Lynch and wife had furnished him the means out of the real value of the lands intended to be sold. The payment of the mortgage debt, then, was a part of the price of the lands. And the funds to pay it were deducted from the price at which the lands were evidently reckoned, and left in Reading's hands for that purpose. If he is permitted to retain it, he will be enabled to hold on to the lands for two thousand dollars— the amount of the mortgage debt and interest thereon— less than Mrs. Lynch intended to sell it. A construction of the conveyance of the title, which would lead to this result, would not be just to her. In construing contracts, equity looks to justice.—1 Fontb. Eq. 1. The exhibits to the bill show that Reading sold the lands purchased from Mrs. Lynch and her husband by him, to Bunkley, upon the same terms, as to the payment of the mortgage debt, on which he had purchased them. And it can not be assumed that Bunkley undertook the payment of the mortgage debt gratuitously. And he must be visited with notice of all that appears from an examination of Reading's title deeds.—*Witter v. Dudley*, 42 Ala. 616; *Johnson v. Thweatt*, 18 Ala. 741. If Bunkley was indemnified to pay the mortgage debt by Reading, and knew the contents of Reading's deed from Mrs. Lynch and her husband, he has no reason to complain that the indemnity which was left in his hands, after the defeat of the mortgage debt by Mrs. Lynch, should be applied in payment of that debt. The mortgage having failed, there was no mortgage debt to pay, and Mrs. Lynch's funds left in Reading's hands for that purpose, reverted to her. It was her money deposited in his hands, upon a trust for her use. If the use failed, as it did, then her title to recover the money revived; for, *equo et bono*, it belonged to her.—*Hitchcock et al. v. Lukens & Son*, 8 Port. 333; *S. C.* 4 Smith Ala. 303. And as it was a part of the price of the lands which had not been paid, it was secured by the vendor's lien; and Mrs. Lynch had the right to go into chancery and enforce that lien.—*Mahone v. Haddock*

et al., 44 Ala. 92 ; Burch v. Carter et al., 44 Ala. 115 ; Wood
et al. v. Sullens, 44 Ala. 686.

The objection that the suit is instituted by Mrs. Lynch
against her husband without the interposition of her next
friend, is not sustained by the record. Mrs. Whatley is
the next friend. This is sufficient.—Chan. Rules No. 15,
Rev. Code, p. 825. The demurrer to the complainant's bill
was properly overruled. The bill is not destitute of equity,
and it is sufficient in all its formal parts.—Revised Code,
§ 3327.

The decree of the court below is affirmed at appellant's
costs, in this court and in the court below.