# Sanders *v*. Robertson *et als.*

*Bill in Equity for an Account of Rents and Profits, and to Annul a Partition of Lands.*

1. *Statute of frauds; void contract.*—A verbal contract between tenants in common, whereby a tenant in possession agrees to purchase the interest of another tenant, but pays no part of the purchase-money, is void under the statute of frauds.—R. C. § 1862, subd. 6.

2. *Partition of lands; when part owner not affected.*—Where two tenants in common—in entire possession of the land—holding respectively one-third and one-half interests, make a voluntary partition of the same into two equal parts, and so hold and improve it, and the owner of the other interest (one-sixth) neither authorized nor sanctioned the partition, but disapproved of it, she is not concluded nor affected by it.

3. *Duty of purchaser; when chargeable with notice.*—It is the duty of a purchaser of an interest in land, to inquire into and examine the title of his

[Sanders v. Robertson et als.]

vendor, and if in so doing he would have been informed by the vendor's title deeds of the existence of an interest in another, he is chargeable with notice of such interest.

4. *Estoppel; declarations.*—Where three owned respectively interests of one-sixth, one-half and one-third of the land, the owner of the sixth interest is not estopped from asserting her claim to the land by her declarations to strangers that she had sold her interest to the owner of the third interest, even though said declarations were communicated to the owner of the other half interest, she having invariably qualified these declarations by adding that he had not paid her for the land.

5. *When bill without equity.*—The complainant, owner of said sixth interest, being no party to the partition deed between the other tenants in common, is wholly unaffected by it, and a bill filed by her, so far as it seeks to annul that deed, is without equity.

6. *Complicated accounts, adjustable in equity.*—A bill filed by one joint owner out of possession against her co-owners in exclusive possession, for an account of rents and profits—where the property includes a licensed ferry, with its items of income and expense—the complainant owning a sixth and the others a half and third interest respectively—is not without equity because the accounts, by reason of the facts herein above stated, are rendered complicated and difficult of adjustment. Such accounts can not be adjusted properly in a court of law, hence courts of equity take original jurisdiction thereof.

7. *Liability for damages and rent; decree of partition; improvements.* While the attempted partition between the two tenants in possesion does not bind the complainant, yet the holder of the half interest held himself out as having the right to make the partition. The deed of partition was color of title to the other tenant in possession, who, holding in good faith, is not liable for damages or rent for more than one year before the commencement of the suit; and in decreeing partition, regard should be had to improvements made by him—in which complainant has no right to share—and the lands on which improvements were placed should be assigned to him, or some other compensation in lands given, without injustice to complainant.

APPEAL from the Chancery Court of Tuskaloosa.

Heard before the Hon. A. W. DILLARD.

On the 21st of September, 1874, the appellant, Harriett Sanders, filed her bill against appellees, alleging, among other things not necessary to be here stated, that she and her two brothers, Arthur F. and Ezekiel L. Sanders, became equal owners of a certain tract of land in Tuskaloosa county, as tenants in common, by purchase in October, 1869 ; that on the 16th of September, 1872, she and the said Ezekiel Sanders executed a deed conveying to the appellee, Isham Robertson, an undivided half interest in said land ; that said Robertson, previous to said date last mentioned, held a bond for title from said Ezekiel for said interest conveyed, and that in December, 1878, said Arthur Sanders and said Robertson made a division or partition between them of the whole of said tract, after said bond was executed, but before the date of the deed ; that she had no knowledge of such partition, and never consented thereto ; that said Robertson has been running a ferry across the Warrior river, which was once known as " Sanders' Ferry," and she claims that said ferry

is a part of said property. On the strength of these facts, she claims one-sixth of the rents of the land held by said Robertson, and one-sixth of the profits of said ferry. The prayer of the bill is "for an account of the rents and profits, and that the partition of December, 1870, between said Robertson and Arthur Sanders, be annulled." There is no prayer for partition nor for general relief.

The answer of Robertson, which is filed also as a cross-bill, admits the partition between Arthur Sanders and himself, which was in writing, dated 17th September, 1870, and the purchase of the interests in said lands, dated September 15th, 1872, as alleged in said bill, the deed of which purchase was executed by appellant and her brother, the said Ezekiel Sanders. Robertson insists that before said partition was made, or said deed was executed, that Harriett Sanders sold all of her interest in said lands to her said brothers, Ezekiel and Arthur; that whether she so sold or not, she frequently declared that she had, and upon the strength of the belief created by her conduct and declarations, said Robertson made said purchase and partition; that the fact of said partition was known to said Harriett, and impliedly ratified by her in her failure to object or dissent; that under the *bona-fide* belief that he was the sole owner of the half of said land occupied by him in pursuance of said written instruments, and in total ignorance of any alleged claim of appellant, he erected necessary and valuable improvements upon said premises, worth about $950. The amount paid for the interest purchased by him is stated to have been about $2,500. Said Robertson claims that under these circumstances, the said Harriett Sanders is estopped from setting up any claim to said half interest of said Robertson, whatever may be her rights against said Arthur Sanders; he denies his liability for any rents, and insists that in no event can any recovery be had for rents, except from one year previous to the filing of her bill. The prayer of said cross-bill is, that a partition be allowed and established so as to secure to said Robertson his improvements aforesaid, and for general relief.

Harriett Sanders, in her answer to said Robertson's cross-bill, denies that she sold, or agreed to sell, all of her interest in said lands to her brothers, but avers that she sold to said Ezekiel one-half of her interests in the lands, being an undivided one-sixth interest, to enable the said Ezekiel to consummate the sale of a one-half interest in the same to said Robertson, and that she afterwards offered to sell to her brother Arthur, her remaining undivided sixth interest, but

# 468 SUPREME COURT [Dec. Term,

such agreement was never reduced to writing, and that not one cent was ever paid her as purchase-money therefor; also, denies all knowledge of the alleged partition, or that the deed was intended as an acquiescence in, or ratification of, said partition; also, denies the statement of her declarations about selling the land to her brothers; also, denies the other material allegations of said cross-bill.

Upon final hearing, the chancellor dismissed complainant's bill, and adjudged and decreed the relief asked by defendant, Robertson, in his cross-bill. From this decree said complainant appeals, and assigns the following as error: *First,* refusing to grant the prayer of appellant's original bill; *second,* in confirming the attempted deed of division or partition of said lands, which appellees, Robertson and Arthur F. Sanders, attempted to make on the 17th of December, 1870; and, also, in adjudging and declaring said deed a valid and binding partition of said lands as against all the parties to this suit, and all parties claiming through them; *third,* in ordering and decreeing that appellant " do pay the costs " of this suit, and that execution might issue therefor.

J. M. MARTIN, for appellant.

SOMERVILLE & McEACHIN, *contra.*

VAN HOOSE & POWELL, for A. F. Sanders.

STONE, J.—Does the proof show that Harriet A. Sanders, the complainant, has sold to Arthur F. Sanders her remaining undivided sixth interest in the land in controversy? It is among the indisputable propositions in this case, that the lands belonged equally to Ezekiel L., Arthur F., and Harriet A. Sanders, as co-equal tenants in common, held by them under a joint deed to the three. Harriet agreed to sell to Ezekiel one-half of her undivided third for an agreed price, but no writings were drawn, and the purchase-money was not paid. At this stage, Ezekiel agreed with Isham Robertson to sell him an undivided half interest in the lands, being his own third, to which he had title, and one-half of his sister's third he had agreed to purchase; and under this contract of sale, Robertson was let into possession in 1870, holding a bond for title when the purchase-money should be paid. In 1872, Robertson having paid the entire purchase-money, Ezekiel and Harriet Sanders executed to him a conveyance of an undivided half interest in the lands. Arthur F. San-

[Sanders v. Robertson et als.]

ders was then also in possession of the land, as a tenant in common. Allowing to the testimony the construction most favorable to Robertson, which it will admit of, and it proves the following state of case: that Arthur F. had agreed with Harriet A., his sister, by oral contract, to purchase her remaining sixth interest in the land, but had not paid the purchase-money. The proof fails to show the agreed price, and fails to convince us he had paid any part of the purchase-money.

This agreement was void, and of no effect whatever, under the statute of frauds; and we must treat this transaction as if no such agreement had been made.—See Rev. Code, § 1862, subd. 6.

We have, then, the case of a tract of land, owned by three tenants in common, Robertson owning a one-half interest, Arthur F. Sanders a one-third interest, and Harriet A. Sanders a one-sixth interest; while Robertson and Arthur F. had the possession. In this condition, in 1870, long before Robertson obtained his title-deed, and when he held only Ezekiel's bond to make him title to the half interest, he and Arthur F. Sanders agreed on a voluntary partition of the land into two parts, with a promise of money from Arthur F. to Robertson to equalize the shares; and they then and there executed an agreement, signed by both in duplicate, declaring the terms of the partition. Harriet A. was not consulted, and did not sign this agreement.

It is contended for appellee, first, that Harriet A. knew of this partition, and authorized or acquiesced in it, or afterwards ratified it; and, in support of the ratification, her delay in claiming rents, and in asserting any right to the land allotted to Robertson for over three and a half years after the partition, during which time Robertson was making valuable improvements on his part of the land, are relied on as showing ratification. The testimony not only fails to prove that she authorized or sanctioned the partition, but it shows her positive disapprobation of it. And, on the question of ratification, the testimony and circumstances are wholly insufficient to sustain the averment. Robertson purchased from Ezekiel Sanders. It was his duty to inquire into, and examine the title of his vendor. If he had done so, he would have found that the title was in three, of whom Harriet A. Sanders was one. He is charged, in law, with notice of every fact, to which this examination would have led. *Johnson v. Thweatt,* 18 Ala. 741; *Dudley v. Witter,* 46 Ala. 664. But he had actual notice that she was part owner of

the land, in the fact that she united with Ezekiel in making title to him.

But it is contended that Miss Sanders estopped herself from asserting any claim to the land, by the declarations witnesses testify she made to them, to the effect that she had sold her interest to Arthur; which declarations the witnesses say they communicated to Robertson. Without stopping to inquire whether such declarations, so made to strangers, could in any case work estoppel, and whether they should not rather have induced Robertson to inquire of her the nature of her claim, it is a sufficient answer to this argument, that in every instance in which she is proved to have made the declaration, she added that he had not paid her for the land. There is no element of estoppel in this case.—1 Brick. Dig. 796, §§ 10, 11; *Barnard v. Campbell*, 55 N. Y. 456.

It results from what we have said above, that Miss Sanders is still the owner of an undivided sixth interest in the lands in controversy, and that she is not concluded or estopped by the partition made by Arthur F. Sanders.

One object of the bill is to have the deed of partition executed by Robertson and Arthur F. Sanders declared void. To that deed Miss Sanders is not a party, and her name was not used in the transaction. It can not, under any circumstances, affect her interest. It is *res inter alias*. It opposes no impediment to the assertion of her rights, legal or equitable. The bill, on this mere ground, contains no equity.

The bill also seeks a settlement of the account of rents and profits. As we have shown, Miss Sanders owns an undivided sixth in the entire premises, while Robertson owns three times that quantity of estate. The income of the ferry, alleged to be an appurtenant of the freehold, together with its expenses, and the necessity for obtaining a license to operate it as a public ferry, render the account complicated and difficult of adjustment; and the attempt at partition, made without the concurrence of Miss Sanders, increases the complications. The proper settlement of such an account in a suit at law, would be difficult and unsatisfactory, if not impossible. The settlement of an account like this, presents many of the embarrassing elements found in the settlement of partnership dealings, and is influenced by some of the equities that are applied in the adjustment of partnership accounts. Justice Story, (1 Eq. Ju. § 466), says: "Cases of account between tenants in common, between joint tenants, between partners, between part owners of ships, and between owners of ships and the masters, fall under the like consid-

[Sanders v. Robertson et als.]

erations. They all involve peculiar agencies, like those of bailiffs, or managers of property, and require the same operative power of discovery, and the same interposition of equity. Indeed, in all cases of such joint interests, where one party receives all the profits, he is bound to account to the other parties in interest for their respective shares, deducting the proper charges and expenses; whether he acts expressly by their authority as bailiff, or only by implication as manager, without dissent, *jure domini*, over the property."

In *Darden v. Cowper*, 7 Jones' Law, 210, Chief-Justice PEARSON said: " If a tenant in common receives more than his share of the profits, by *an excessive use of the property*, as by wearing out the land, or by an *improper use of it*, as by cutting down the timber and selling it, he can not be treated as a tortfeasor, but the remedy of the co-tenant is by an action of account, or, a bill in equity for an account."

In *Leach v. Beatties*, 33 Vermont, 195, the court, after speaking of the inadequacy of the remedy at common law, added : " The only means of obtaining such an account by one tenant in common of another was by bill in the court of chancery; which court had original jurisdiction in that behalf, founded on the peculiar relation of the parties, and not at all depending on the need of discovery, and the incidental right of administering full and final relief."

In Parsons' Maritime Law, 103, it is said to be " the custom for part owners of a ship to bring a bill against each other in equity for adjustment of accounts, in like manner as is done by partners." And Story, (1 Eq. Ju. § 451), states it as a " principle on which courts of equity constantly act, by taking cognizance of matters which, though cognizable at law, are yet so involved with a complex account, that it can not be properly taken at law."

In Adams' Equity, 525, it is said, with same qualification, speaking of joint ownership, " if either of the co-owners has been in the exclusive reception of the rents, [the court of equity will] decree an account of his receipts."—See, also, *Dyckman v. Valiente*, 42 N. Y. (Hand.) 549; *McLellan v. Osborne*, 51 Maine, 118.

Certain facts and circumstances, shown in this record, conspire to render the account unusually complicated : the improvements made by Robertson, the income from the ferry, with its conditions and attendant circumstances, and, above all, the partition attempted by Robertson and Arthur F. Sanders. Robertson is clearly entitled to one-half of the income proper; and if the partition was, in fact, equal, he

has realized no more than he was entitled to.   On the other hand, Arthur F., on this postulate, has realized just as much in excess of his true share, as it will be found that Robertson is indebted to complainant.   This rests on the single fact, that while he owned only two-thirds of the part allotted to him in the partition with Robertson, he has, according to his own and complainant's testimony, realized the whole income of that half, and accounted to his sister for only one-sixth—one-half of her share.   Accounts, complicated as this is, can not be adjusted properly in a court of law; and for this reason, courts of equity take original jurisdiction of such claims.

While we hold above that the attempted partition between Robertson and Arthur F. Sanders did not and does not bind the complainant, yet, we are convinced that in making that partition the said Arthur F. held himself out as the owner of the entire half interest, and as having the right to make the partition.   The deed of partition was color of title to Robertson, and we are convinced he held the possession in good faith.   He is, therefore, not liable for damages or rent for more than one year before the commencement of the suit. Rev. Code, § 2617; *Ormond v. Martin*, 37 Ala. 598, 606; *Dudley v. Witter*, 46 Ala. 664, 696-7.

In decreeing partition, regard should be had to the improvements made by Robertson.   In these, complainant has no right to share; and, in making the division, the lands on which the improvements were placed should be assigned to Robertson, if it can be done without injustice to complainant.   If it can not be so done, then he should be compensated by an increased quantity of land, or in some other way. See note 1, Adams' Equity, 525.

If we were to attempt a decree in this cause, we might do great injustice.

Reversed and remanded, to be proceeded in according to the principles above declared.