# Young *v.* Hawkins.

*Bill in Equity to enforce Vendor's Lien on Land.*

1. *Promise for benefit of third person.*—A promise to one person, to pay a debt due from him to another, enures to the benefit of the latter, and may be enforced by him.

2. *Election.*—To make an election binding, the party must have knowledge of the facts between which he is required to choose; and hence, when the holder of a note, given for the purchase-money of land, is a non-resident, the recovery by him of a judgment on the note can not be deemed a renunciation of promises to pay it by sub-purchasers of the land, when it is not shown that he had knowledge of such promises.

3. *Vendor's lien ; who may. assert, where land has been sold several times.*—Where the purchaser of lands agrees, in part payment of the agreed price, to pay his vendor's outstanding note to a third person,

[Young v. Hawkins.]

which is a lien on the land, and afterwards sells to a sub-purchaser, who makes a similar promise to pay the outstanding note; a payment of the note by such sub-purchaser would extinguish the lien on the land, and the liability of each of the parties; a payment by the purchaser would give him a right to enforce the vendor's lien on the land, as against the sub-purchaser; and a payment by the maker of the note, to whom the first promise to pay it was made, would give· him a similar right to enforce the lien; but the latter can not maintain a bill in his own name alone to enforce the lien, when he has not paid the note, although the holder has recovered a judgment on it against him.

4. *Same; parties; variance.*—On this state of facts, the holder of the note is a necessary party to the bill, or the several contesting claimants, if there is a dispute as to the ownership of it; and the bill must allege the special facts which show that the maker of the note is remitted to his former right to enforce the lien, else the variance will be fatal to relief.

APPEAL from the Chancery Court of Etowah.
Heard before the Hon. N. S. GRAHAM.

DENSON & DISQUE, for appellants.—(1.) The complainant's own testimony shows that he has no interest in the subject-matter of this litigation, and hence no right to maintain the suit; that he has never paid his outstanding note, which belongs to Mrs. Waters, and to whom Young promised to pay it. *Rapier v. Gulf City Paper Co.*, 64 Ala. 330; *Winter v. Merrick*, 69 Ala. 86; *Bryan v. Hendrix*, 57 Ala. 387. (2.) If the contract between Hawkins and Young was, as the proof shows, that Young's promise to pay the outstanding note of Hawkins was taken and accepted by Hawkins in absolute payment and extinguishment, *pro tanto*, of so much of the purchase-money agreed to be paid by Young, then there is no debt between Hawkins and Young, and hence no lien.—*Dennis v. Williams*, 40 Ala. 633; *Carriere v. Ticknor*, 26 Ala. 571; *Brewer v. Bank*, 24 Ala. 439; *Bradford v. Harper*, 25 Ala. 347; *Schnebly v. Ragan*, 28 Amer. Dec. 198; *Patterson v. Edwards*, 29 Ala. 67; 2 Pom. Eq. § 1252; Jones on Mortgages, §§ 194–98. (3.) The judgment in favor of Mrs. Waters, if she is the owner of the note, is a lien on the land; and a payment by the defendants of the decree here obtained against them by Hawkins, would not discharge the land from that lien, she not·being a party to the suit.—*Griffin v. Camack*, 36 Ala. 695; *Yerby v. Sexton*, 48 Ala. 311–25; *Black v. Zacharie*, 3 Howard, 483; *Kelly v. Payne*, 18 Ala. 371.

TURNLEY & TURNER, and DUNLAP & DORTCH, *contra*, cited *Carver v. Eads*, 65 Ala. 190; *Bankhead v. Owen*, 60 Ala. 457.

STONE, J.—The present is a suit by Hawkins against Young and Hood, to enforce an alleged vendor's lien. The

[Young v. Hawkins.]

bill makes the ordinary case of a sale and conveyance of certain lands by Hawkins to Young, of putting the vendee in possession, and avers that two hundred and fifty dollars of the promised purchase-money, with interest, remain unpaid. The bill then avers that Young subsequently sold and conveyed the lands to Hood, and that the latter purchased with knowledge of such unpaid purchase-money. The bill on its face clearly contains equity, and the demurrer to it was rightly overruled.

The answer denies that any unpaid purchase-money promised to be paid to Hawkins remains unpaid, and rests for its support on the following state of facts: The lands in controversy formerly belonged to John Payne, father-in-law of Hawkins. Payne had had six children, some of whom had died, leaving children. Payne sold and conveyed these, with other lands, to Hawkins and to Rains, another son-in-law, at the agreed price of fifteen hundred dollars, for the purpose of dividing the proceeds among his descendants, or lines of descendants. Two of the shares, falling to the wives of Hawkins and Rains, were left with their husbands, the purchasers. For the remaining thousand dollars, four notes were given, payable to Payne, each in the sum of two hundred and fifty dollars; two of these notes made and executed by Hawkins, and two by Rains. Payne thereupon set apart these four several notes to his other lines of heirs, one to each line separately. Soon after this Payne died. Hawkins has never paid either of the notes he thus gave in the purchase of the land. Hawkins and Rains then agreed on a division of the lands purchased, and interchanged deeds accordingly. Hawkins sold and conveyed his allotted share of the lands to Young, at the agreed price of one thousand and fifty dollars. Five hundred and fifty dollars of this sum Young paid, partly in cash, partly in relieving incumbrances created by Hawkins: and for the residue of it, gave his note payable to Mrs. Hawkins, which he has since paid. He gave no writing in relation to the five hundred dollars remaining, but promised Hawkins he would pay his, Hawkins', outstanding two notes for purchase-money, to the rightful holders of the notes, when found out. Young subsequently sold and conveyed the lands to Hood, who, as part purchase-money, promised to pay Hawkins' two outstanding notes, when their owners should be ascertained. Hood has paid one of these notes. The other remains unpaid, and it is claimed there is some dispute as to its ownership. Complainant claims it is the property of Mrs. Waters, who has recovered judgment thereon against Hawkins, he making no defense thereto. Execution on this judgment has been returned "No property found." The above line of defense is relied on in the pleadings, and is fully sustained by the testimony.

[Young v. Hawkins.]

Much is said in argument about there being one or two debts. Technically there are two; the debt of Hawkins, evidenced by his note, and the promise or debt, first of Young, and then of Hood, to pay that debt. Equity cares but little about the forms of things. When Mrs. Waters, or the rightful owner, is paid, then she has no further claim on any one. If the payment be made by Hood, that will extinguish all the liabilities. There will then be no debt to or from any one. If payment be made by Young, then he has a claim on Hood, secured by a lien on the land. If the payment be made by Hawkins, then he has a claim on Young, and a lien. The promise he procured to be made to the owner and holder of the note will then enure to him.—*Kelly v. Payne*, 18 Ala. 371; *Buford v. McCormick*, 57 Ala. 428.

Another preliminary question may be considered. It is contended that, by reducing the claim to judgment against Hawkins, Mrs. Waters has elected to renounce the security offered her in the promises of Young and Hood, and to rely on Hawkins for payment. We need not decide whether, in any case, this would be so. Mrs. Waters is shown to be a resident of Texas, and it is no where shown she was ever notified that the promises, either of Young or Hood, have ever been made for her benefit. Parties, to make a binding election, must have knowledge of the facts, between which they are required to choose.—*Reaves v. Garrett*, 34 Ala. 558; *Adams v. Adams*, 39 Ala. 274.

It can not be denied, that if Hawkins, after making the sale to Young, had extinguished the liability on the note Young had promised to pay, Young, and probably Hood, would have thereby become liable to pay the money to Hawkins, and he could then have maintained a bill against the two, and against the land.—*Bunkley v. Lynch*, 47 Ala. 210. So, Mrs. Waters, or whoever may be the rightful owner of Hawkins' unpaid purchase-money note, may maintain a bill against Young and Hood, and the land, on the promises to pay that note, given in the several purchases made of Hawkins' allotted interest in the land.—*Carver v. Eads*, 65 Ala. 190; *Wilkinson v. May*, 69 Ala. 33. But, to maintain a bill by Hawkins alone, on the state of facts first above supposed, it is necessary to aver the special facts which re-vest in Hawkins the right to demand and receive the money. This, because Young was not required to promise, and did not promise, to pay the money to Hawkins. The consideration moved from Hawkins, and the promise was made to him; but the promise was to pay the money to the holder of the note, and it was procured to be so made by Hawkins himself. The bill in this case does not aver the special facts which would authorize Hawkins to maintain the bill in his own name,

[Motes v. Bates.]

and there is consequently a variance between the allegations and proof, which forbids relief in the present frame of the bill. 1 Brick. Dig. 743, § 1538; *Lewis v. Montg. B. & L. Asso.*, 70 Ala. 276.

In this case, however, it is not enough to amend only the averments of the bill. The owner of the note, to whom the money is due, should be made a party, that such interest may be properly protected, and the money decreed to the proper party; and if there be a dispute about the ownership, all contesting claimants should probably be brought before the court. Mrs. Waters, if the rightful owner of the note, might be made a co-complainant. Or Hawkins, by making the claimant or claimants of the note parties, may possibly maintain a bill, to compel Young and Hood to pay the money, in exoneration of the liability resting on him. They are legally bound to pay that note—are bound to relieve Hawkins from it; and has he not an equitable right to compel them to do so, and to have the land subjected to its payment, if necessary? As to this debt, they are under a primary obligation to Hawkins to pay it, and the lands are under an equitable lien for its performance.—3 Pom. Eq. § 1417; 2 Story's Equity, § 849. We, however, simply offer the suggestions, without intending to decide them absolutely.

The decree of the chancellor must be reversed, and the cause remanded.