# Rarden *et al. v.* Badham.

*Bill in Equity to Enjoin Suit and Rescind Contract of Sale.*

1. *Contract of sale; right of recision.*—Where by the fraudulent representation of a vendor in relation to material facts concerning the title of land, the falsity of which he has not the means of ascertaining and could not ascertain by reasonable diligence, one is induced to invest his money in the purchase of land, the purchaser can by bill in equity rescind the sale, and have the contract of purchase annulled.

2. *Same; same.*—If the vendor of lands falsely represents his title to be good, when it is not, and the purchaser relying on such representation, is thereby induced to enter into a contract to purchase said land, such misrepresentation, though made under an honest mistake as to the sufficiency of the title, entitles the purchaser to have the contract rescinded.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. JOHN C. CARMICHAEL.

The bill in this case was filed by the appellant against the appellee. In addition to the facts stated in the opinion, the bill further states that the defendant, Badham, has commenced suit against the complainants in the city court of Bessemer on one of said purchase money notes and has commenced suit in the circuit court of Jefferson county to enforce the collection of another of said purchase money notes.

The bill prayed for a temporary writ of injunction restraining the further prosecution of these suits instituted by Badham and prayed that the contract between complainants and Badham be rescinded and annulled, and that on final hearing said injunction be made perpetual. On this bill a temporary injunction was granted by the chancellor as prayed for in the bill.

The other facts of the case are sufficiently stated in the opinion. Upon the final submission of the cause on the

[Rarden *et al. v.* Badham.]

pleadings and proof the chancellor rendered a decree denying the relief prayed for, and ordering the bill dismissed. From this decree the complainants appeal and assign the rendition thereof as error.

PINCKNEY SCOTT, for appellants.—Cited *Crown v. Carriger,* 66 Ala. 590; *Munroe v. Pritchett,* 16 Ala. 789; *Moore v. Williams,* 12 Am. St. Rep. 847; *Foster v. Gressett's Heirs,* 29 Ala. 395; *Bryant v. Booth,* 30 Ala. 315; *Baptiste v. Peters,* 51 Ala. 158; *Orendorff v. Tallman,* 90 Ala. 441; *Griel v. Lomax,* 86 Ala. 132.

WALKER PERCY, *contra.*—Cited *Young v. Harris Admr.,* 2 Ala. 108; *Clements v. Loggins,* 2 Ala. 518; *Le-Bron v. Morris & Co.,* 110 Ala. 128; *Pate v. McConnell,* 106 Ala. 449; *Hunter v. O'Neal,* 12 Ala. 38.

HARALSON, J.—The bill states that on the 10th of January, 1903, the complainants entered into a written contract with defendant, whereby complainants were to purchase from defendant the property in Bessemer known as the "Grand Hotel," together with all its contents, at and for the sum of $35,000.00, by paying $5.00 in cash, and the balance in monthly installments of $400.00 each, except the last two payments, one for $95.00, and the other for $100.00; that defendant represented that he owned said hotel and its contents, as described in a contract exhibited to the bill, and marked A; that relying upon the statements of defendant, complainants were induced to execute said contract, to pay the $5.00 and execute their notes as provided therein.

They further state, that respondent falsely represented to complainants, that he was the owner of said property and had the right to convey the same; that the title to the property was vested in him, at the time complainants entered into and executed said contract and notes, and paid the sum of five dollars, and that they relied entirely on said statements of defendant and were induced thereby to purchase said property, to execute said agreement marked Exhibit A and their said notes, and to pay said sum of five dollars; that defendant well knowing that

the title to said property was not vested in him but in the Charleston Savings Institution, or some other person, fraudulently withheld such information from complainants, who were thereby induced to execute and enter into said contract pay the said sum of money and execute their said notes.

The answer denies all the averments of the bill, as to false representations and deceit as to title.

On pleadings and evidence, the chancellor rendered a final decree, denying the relief prayed and dismissed the bill.

The well settled principles of law governing the decision of the cause are, that "Where one by the fraudulent representations of another, in relation to material facts concerning the title to land, the falsehood of which he had not the means of ascertaining, and could not have ascertained by reasonable diligence, is induced to invest his money in the purchase of land, he can have relief in chancery, (even) before an eviction, and without abandoning possession.—*Meeks v. Garner,* 93 Ala. 20; *Younge v. Harris,* 2 Ala. 111.

"It is generally held that, in order to render a party liable, he must have been guilty of active concealment, made false assertions by word or action, or prevented inquiry on the part of the vendee, in short his conduct must have been active and not merely passive."—28 Am. & Eng. Ency. Law, (1st ed.) 113; *Bryant v. Boothe,* 30 Ala. 311.

"Want of notice of a fact which is the result of a want of that diligence which the law requires for its ascertainment furnishes no ground for protection."—*Chapman v. Glassell,* 13 Ala. 55.

"A purchaser has the right to call and examine the claim of title to the land he is about to purchase, and if he neglects to do this, and purchases without seeing the deeds, through which he is to receive title, it is his own folly; in the language of the authorities, it is *crassa negligentia,* and he cannot protect himself from the consequences of notice, by insisting upon his own folly and neglect."—*Johnson v. Thweatt,* 18 Ala. 741; *Witter v.*

*Dudley,* 42 Ala. 616; *Bunkley v. Lynch,* 47 Ala. 216; *Sanders v. Robertson,* 57 Ala. 465; *Blanks v. Walker,* 54 Ala. 117.

The foregoing principle is consistent with that other, that "if the vendor of land falsely represents his title to be good, when it is not; and the purchaser relying on the representation, is thereby induced to enter into the contract,—such misrepresentation though made under an honest mistake as to the sufficiency of the title, entitles the purchaser to have the contract rescinded." *Bailey v. Jordan,* 32 Ala. 50; *Crown v. Carriger,* 66 Ala. 592.

The evidence for the plaintiffs showed, that G. W. Stevenson, as agent for defendant, made the sale to complainants for the defendant, J. W. Rarden, one of the complainants testified, that Stevenson said that he was selling the property for defendant who owned it, and afterwards, complainants, defendant and Stevenson met, to complete the sale, at which time Mr. Fullenwider was also present; that at the time the contract was entered into, the defendant stated that he was the owner of the property and had the right to convey it; that no one showed witness an abstract of title, by which it appeared that defendant owned the property, nor did he show witness any contract existing between himself and any one else in reference to the title to the property.

On the cross-examination he testified, "Both Mr. Badham and Mr. Stevenson said that Mr. Badham had a right to sell the property, but I don't remember the specific words they used. I do not know that Mr. Badham said he had a right to sell it. A man has a right to sell any thing he owns. I didn't see an abstract of title before closing the trade  *   *   *   *  I just thought he owned it." He also stated, that he had no recollection of defendant telling him that the contract was similar to the one he had for the purchase of the property; that he thought the deed was in defendant, and had no other thought but that he had a deed; that he did not remember his using the words, that he owned the property, but his conversation led to that point, and he never thought to question his ownership. He also testified that if he

had known that defendant was holding the property under a similar contract to the one he had made with complainants, he would not have bought it.

Burgin testified, that if he had heard any thing from defendant or any one else as to the title to the property being in any one else except defendant, he would not have signed the contract; that there was nothing stated in the final conference with defendant about the Charleston Savings Institute; that he heard the title was not in Badham, a few days after the contract was signed, and the contract was made upon the representations of Stevenson and defendant that the latter owned the property. He admits that he does not remember the exact language used, but that he understood from the conversation with defendant and Stevenson, that the title to the property was in defendant.

Attached to the deposition of one of complainants, is an abstract of title to the property in question, introduced for the purpose of showing that the record title to the property, at the time of the sale was in the Charleston Savings Institute.

George H. Stevenson for the defendant, testified that he understood, at the time of the trade, that it was the property of defendant, whom he was representing, but that the title to the property was not brought up; that an abstract of its title was handed around, and as he thought, was looked at by all; that the defendant was not there in the beginning, but was there, after the trade had progressed some, and he was certain Burgin, one of the complainants, overlooked the abstract; that the contract was read over to complainants and they seemed to be satisfied with it; that defendant stated, that he had not had an attorney to draw it up, but that it was simply a copy of the one he had, from the Charleston Savings Institute, and further than this, he did not remember that defendant said any thing about the title to the property.

Fullenwider testified that defendant, on being introduced to complainants, handed them a copy of the agreement which they both carefully read, and stated that it

was prepared by a good lawyer and was the same that then existed between him and the Charleston Savings Institute; that he would require them to insure the property for $10,000.00, the same amount that the Charleston Savings Institute required him to carry, and that nothing was said beyond this about his title, and no questions were asked about it.

The defendant testified in substance to the same effect, —that he bought the property in May, 1902, from the Charleston Savings Institute for $25,000.00, paying $1,000.00 in cash, and giving his notes for $400.00, payable monthly, for the balance, which notes he had regularly paid each month, and is amply able to pay the remainder of his notes as they mature; that he is ready and able upon payment in full by complainants of their said notes, to convey a good title to the property to them, and was willing, if the court deemed it proper, to execute a bond in amount to be fixed by the court with good and sufficient sureties to secure the execution of a good and valid title to the property in question to complainants, upon the payment by them in full of the purchase money. In its final decree, the court prescribed a bond in the sum of $15,000.00 to be approved by the register, payable to complainants, conditioned to execute to them a title in fee simple free of all incumbrances and with covenants of warranty in accordance with his contract with them, which bond was to be executed within thirty days, and upon its execution the bill was to be dismissed. This bond was executed as prescribed, and upon motion of defendant, the bill was dismissed.

The execution of this bond shows, at least, the good faith of defendant in his contract making sale of the property to complainants, of his ability to carry it out, and the absence of fraud in its execution. The evidence is reasonably satisfactory, that defendant did not falsely represent to the complainants that he was the owner of the property, and that he had a right to convey the same to them, as is alleged in the bill. Nor does it appear that defendant made any willful and misleading representations to them, to induce complainants to purchase the property. If they did not acquire full notice

and information as to the status of the title of the prop-
erty, it was their own fault, and did not come from any
fraud or misrepresentation of defendant. They had am-
ple and unobstructed opportunity to do so.

The decree of the court below is affirmed.

Affirmed.

McClellan, C. J., Dowdell and Denson, J.J., con-
curring.